■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALCOLM BAPTISTE, Appellant. [760 NYS2d 594] —Kane, J. Appeals (1) from a judgment of the County Court of Schenectady County (Tomlinson, J.), rendered July 15, 1996, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and criminal possession of a weapon in the second degree, and (2) by permission, from an order of said court (Eidens, J.), entered August 6, 2001, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

On August 11, 1995, defendant and his former girlfriend, Jeanette Cortijo, engaged in a verbal altercation, after which defendant uttered that he was tired of her and "I am going to kill her." In the early morning hours of August 12, 1995, the two had another altercation where defendant pushed Cortijo into her car. She then drove her car at defendant, causing him to fall off of the bicycle he was riding. He again stated that he was tired of her and was going to kill her. Defendant then retrieved his 9 millimeter gun from the apartment at 945 Emmett Street in the City of Schenectady, Schenectady County, where he lived with codefendant Jamal Dennis and three women. He and Dennis located Cortijo, leading to another verbal altercation. While the two men attempted to walk away, Cortijo followed them in her car, drove away, then quickly returned. At that point, at approximately 3:30 A.M., defendant shot into Cortijo's car multiple times, killing her and her passenger, Chakima Dickerson. Defendant and Dennis then fled and returned to their nearby apartment, where defendant admitted to one of the women that he killed Cortijo. At ap-

proximately 4:00 A.M., defendant called a girlfriend in Brooklyn to pick him up.

An individual informed the police that he saw three men running in the direction of an alley next to 945 Emmett Street at about the time of the shootings. Police saw defendant, Dennis and others hurriedly loading a cab from Brooklyn at that location at approximately 9:00 A.M. Police questioned these individuals regarding their actions and the cab was searched, revealing nothing. The vehicle then left for Brooklyn. Later that morning, a downstairs resident of 945 Emmett Street called the police. She had found a shirt wrapped around a gun clip in the backyard bushes, which had not been there around 1:00 A.M. The clip contained 9 millimeter bullets of the same brand as the casings recovered from the crime scene. As a result of this discovery, the Schenectady police sent a bulletin to the State Police requesting that they stop the cab and detain its occupants. Several State Police cars stopped the vehicle on the Thruway. Troopers approached with guns drawn, requesting that everyone exit the vehicle. Each occupant was patted down, handcuffed and then transported to the State Police barracks in separate police cars. At the barracks, defendant was shackled to the wall in an investigation room and read his *Miranda* rights; he sat for about two hours and then was questioned. At first, defendant denied knowing anything about the incident. Questioning continued, intermittently, for several hours, during which time defendant was provided food, beverages and cigarettes. Meanwhile, in Schenectady, police located a 9 millimeter Glock pistol and empty clip in a vacant lot two blocks from the murder scene and one block from 945 Emmett Street.

At about 5:30 P.M., an investigator spoke with defendant, after again reading him his *Miranda* rights. Questioning elicited that defendant knew Cortijo, she was a former girlfriend and they had argued the previous night. A few hours later, defendant made an incriminating, but also exculpatory, oral statement to the investigator. The investigator then went through defendant's story again, reducing it to writing, which defendant reviewed and signed at about 11:30 P.M.

Defendant was charged by indictment with 11 counts, including two counts of murder in the second degree in violation of Penal Law § 125.25 (1), two counts of murder in the second degree in violation of Penal Law § 125.25 (2), and one count of criminal possession of a weapon in the second degree in violation of Penal Law § 265.03. Following an extensive *Huntley* hearing, County Court found the stop and subsequent arrest legal, rendering defendant's statements admissible. After a

jury trial, during which several counts of the indictment were dismissed, defendant was convicted of two counts of second degree murder in violation of Penal Law § 125.25 (2) (depraved mind murder) and one count of criminal possession of a weapon in the second degree.* Defense counsel unsuccessfully moved for a new trial, pursuant to CPL 330.30. County Court sentenced defendant to two consecutive prison terms of 25 years to life for the murder counts, and a concurrent prison term of 5 to 15 years for the weapon count. A subsequent CPL article 440 motion was denied without a hearing. Defendant appeals.

Defendant first contends that County Court erred by charging the jury on depraved mind murder, because the evidence presented at trial could not support that charge. A trial court may submit inconsistent counts of an indictment to a jury, provided the prosecution has offered legally sufficient evidence to support both charges and they are submitted in the alternative (*see* CPL 300.40 [5]; *People v Jarrett,* 118 AD2d 657, 658 [1986], *lv denied* 67 NY2d 944 [1986]; *see also People v Gonzalez,* 160 AD2d 502, 504 [1990], *lv denied* 76 NY2d 857 [1990] [inconsistent murder counts]).

A person commits murder under Penal Law § 125.25 (2) when, "[u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." This "differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct" (*People v Register,* 60 NY2d 270, 274 [1983], *cert denied* 466 US 953 [1984]; *see People v Mettler,* 147 AD2d 849, 850 [1989], *lv denied* 74 NY2d 666 [1989]). Shooting a person at close range may be deemed reckless rather than intentional, especially if the "shooting itself appeared to have been sudden, spontaneous and not well-designed to cause imminent death" (*People v Sanchez,* 98 NY2d 373, 377 [2002] [depraved mind murder although victim shot at point-blank range]; *see People v Register, supra*). Depraved indifference may be found where an individual intended to cause injury, but recklessly disregarded a substantial risk of death (*see People v Meehan,* 229 AD2d 715, 718 [1996], *lv denied* 89 NY2d 926 [1996]; *compare People v Register, supra* [the defendant brought loaded gun to bar, said

---

* Dennis was acquitted of all homicide charges, but found guilty of criminal possession of a weapon in the third degree. That conviction was affirmed (*People v Dennis,* 263 AD2d 618 [1999], *lv denied* 94 NY2d 822 [1999]).

he was going to kill someone that night, and shot into crowded bar]; *People v Watson,* 299 AD2d 735 [2002], *lv denied* 99 NY2d 633 [2003] [shots fired into crowd outside bar]).

Viewing the evidence in the light most favorable to the People (*see People v Sanchez, supra* at 377; *People v Roe,* 74 NY2d 20, 23 [1989]; *People v Sawyer,* 274 AD2d 603, 606-607 [2000], *affd* 96 NY2d 815 [2001]), the jury here could rationally have determined that defendant killed Cortijo and Dickerson recklessly, rather than intentionally. The sole eyewitness to the shooting testified that after defendant and Cortijo argued, defendant walked away. She followed him in her car, continuing to have words with him. Only when Cortijo returned after driving away did defendant shoot. Defendant did not approach the car, but remained on the sidewalk and fired at the car. The jury could have believed that if defendant had initially intended to kill Cortijo, his walking away from the earlier encounter evidenced an abandonment of that intent. When Cortijo resumed the confrontation, it was not unreasonable for the jury to conclude that defendant acted suddenly and spontaneously, without intent to kill, but rather fired into the car intending to scare or injure Cortijo. Defendant's extreme recklessness both created and disregarded a grave risk of death to the people in the car under circumstances which evinced a depraved indifference to human life (*compare People v Russell,* 91 NY2d 280 [1998] [depraved indifference murder where innocent bystander killed by stray bullet]; *People v Demand,* 268 AD2d 901 [2000], *lv denied* 95 NY2d 795 [2000] [same]). There was legally sufficient evidence to support the charges for depraved mind murder and they were properly submitted to the jury (*see People v Gonzalez, supra*; *People v Jarrett, supra*).

Defendant further contends that his incriminating statements to police should have been suppressed as they were obtained subsequent to an arrest effectuated without probable cause. Probable cause exists where "evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it" (CPL 70.10 [2] [giving definition of "reasonable cause to believe a person has committed an offense," such as to permit a warrantless arrest under CPL 140.10 (1)]). Initially, the cab was legally stopped on the Thruway because the police had reasonable suspicion to detain defendant and Dennis for questioning about the homicides (*see People v Chase,* 85 NY2d 493, 501 [1995]; *People*

*v Beverly,* 220 AD2d 881, 883 [1995], *lv denied* 87 NY2d 898 [1995]). In determining whether the situation rose to the next level, so that the suspects were subjected to a de facto arrest, County Court must look at what a reasonable person, innocent of any crime, would have thought if he or she had been in the same position (*see People v Hicks,* 68 NY2d 234, 240 [1986]; *People v Yukl,* 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]; *People v Ripic,* 182 AD2d 226, 231 [1992], *appeal dismissed* 81 NY2d 776 [1993]). Defendant was removed from a vehicle at gunpoint by a multitude of police officers, immediately handcuffed, transported to the State Police barracks in a police car, shackled to the wall inside the barracks and read his *Miranda* rights several times; no one explained why defendant and his companions were being detained and he was detained for over 10 hours before making incriminating statements. There is no question that defendant was in police custody (*see People v Vaughn,* 275 AD2d 484, 487 [2000], *lv denied* 96 NY2d 788 [2001] ["no reasonable person, innocent of any crime, while sitting handcuffed in a police vehicle with * * * detectives, would believe that he or she was free to leave the presence of the police"]; *People v Hardy,* 223 AD2d 839, 840 [1996] [listing factors to consider]). "[O]nce he was handcuffed and taken away in a police vehicle the detention of defendant rose to the level of an arrest which triggers the traditional safeguard of the requirement of probable cause" (*People v Vaughn, supra* at 487).

Defendant's arrest at the time the cab was stopped was proper only if probable cause existed. At that time, the police knew that a drunk, high witness saw three men running in the direction of an alley next to 945 Emmett Street around the time of the shootings, defendant, Dennis, the cab driver and a woman were loading a cab from Brooklyn about 9:00 A.M. that morning to leave 945 Emmett Street, and a gun clip with the same type of bullets used in the shootings was found in the bushes behind 945 Emmett Street between 1:00 A.M. and 9:30 A.M. They were unaware of any connection or relationship between defendant and the victims. While this information was sufficient for police to have a reasonable suspicion that defendant and Dennis may have been involved with the murders, it was not sufficient to support probable cause to believe that they committed the murders (*see People v De Bour,* 40 NY2d 210, 223 [1976]). As no probable cause existed when defendant was taken into custody, defendant endured an illegal arrest and his statements should have been suppressed.

Having determined that County Court improperly admitted

defendant's statement into evidence, we next examine whether this admission was harmless error. "In a criminal case, constitutional error may be harmless only if it is 'harmless beyond a reasonable doubt, that is, there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction.' In making that determination, a court must assess the quantum and nature of the evidence against the defendant, if the error were excised, and the causal effect the error may nevertheless have had on the jury" (*People v Simmons,* 75 NY2d 738, 739 [1989], quoting *People v Hamlin,* 71 NY2d 750, 756 [1988] [citations omitted]).

A redacted version of defendant's statement was received in evidence and the police witnesses were directed not to make reference to defendant's admission of being at the scene of the shooting. Defendant's redacted statements to the police acknowledged his relationship with Cortijo, the confrontations with Cortijo preceding the shooting and the arrangements for transportation from Schenectady to Brooklyn at approximately 4:00 A.M. on the morning of the shooting. The prosecution presented the testimony of the three women who resided with defendant at 945 Emmett Street on the morning of the shooting. One of the women established that defendant resided at 945 Emmett Street, Cortijo was defendant's former girlfriend, defendant and Cortijo had two confrontations on the morning of the murder, one in which Cortijo knocked defendant off his bicycle with her automobile, and defendant indicated that he was going to kill Cortijo. She further identified the murder weapon as belonging to defendant and that she had seen the weapon at 945 Emmett Street prior to the murder. She testified that when defendant returned to 945 Emmett Street after the shooting, he was out of breath and he looked nervous and scared. Another of the women residing at 945 Emmett Street testified that she likewise observed a confrontation between Cortijo and defendant on the morning of the murder and observed the damage to defendant's bicycle after the second confrontation. She identified the weapon used to kill Cortijo and Dickerson, and defendant's possession of same at the time that he left 945 Emmett Street with Dennis immediately prior to the shooting. She observed defendant and Dennis when they returned to 945 Emmett Street after the shooting, and described defendant as appearing nervous and scared. She likewise heard defendant state that he wanted to kill Cortijo after she had hit him while he was riding his bicycle.

The third woman resident of the apartment was defendant's girlfriend at the time. She confirmed two confrontations be-

tween defendant and Cortijo on the morning of the murder, as well as the damage to defendant's bicycle and his statement that he was going to "kill that bitch." She testified that she had previously seen the murder weapon in defendant's apartment in Brooklyn, and when defendant and Dennis left the apartment on the morning of the murder, she saw it in Dennis' possession. Further, she said that when defendant returned after the shooting, he was breathing heavily and he asked her to lock the doors and close the blinds. When she asked defendant what had happened, he responded that "we pushed her wig back," which she interpreted as street slang meaning defendant had killed Cortijo. She overheard a conversation between defendant and one of the other women in which defendant indicated that he had gotten rid of the gun.

The People called Curtis Rice, who was an eyewitness to the shooting. He was familiar with defendant, identified him as one of the individuals present at the time Cortijo and Dickerson were shot, and identified Dennis as the shooter. He witnessed the argument that immediately preceded the shooting. A male inmate at the Schenectady County Jail testified that defendant told him that he had shot Cortijo and Dickerson. Finally, the People called the cabdriver who transported defendant and Dennis from Schenectady to the location on the Thruway where they were stopped by the State Police. He testified that he was called at home at 5:00 A.M. on the morning of the shooting to pick up a fare in Schenectady and return the fare to Brooklyn.

The People produced independent proof by the testimony of the three women as to the prior relationship between defendant and Cortijo the confrontations preceding the shooting, defendant's possession of the murder weapon on the morning of the shooting, his statement of intent to harm Cortijo and his departure and return from the residence prior to and after the shooting, as well as his demeanor at the time that he returned to the residence. These witnesses, as well as the cabdriver, confirmed defendant's early morning call to Brooklyn to procure transportation to take him from Schenectady that morning. The independent proof at trial concerning the information contained in defendant's statements was overwhelming. Because defendant's statements did not admit the shooting and the contents were established by other witnesses, the statements had a negligible effect upon the jury. Under the circumstances, we find that the introduction of defendant's statements constituted harmless error (see People v Simmons, 75 NY2d 738, 739 [1989], supra).

Defendant next argues that County Court improperly excluded his rebuttal witness, Christopher Litts. We agree that Litts' testimony as to a conversation between Litts and defendant should have been admitted to rebut the testimony of the inmate. However, given the fact that the more damaging portion of the inmate's testimony concerned a direct conversation between himself and defendant—to which Litts was not a party—and that there was significant other proof of defendant's involvement in the shooting, including his admission to his then girlfriend, we find this error to be harmless (*see id.* at 739).

Defendant's ineffective assistance of counsel argument is wholly without merit. A review of the record reveals that trial counsel not only provided defendant with "meaningful representation," he provided defendant with exceptional representation exceeding both state and federal standards (*see Strickland v Washington,* 466 US 668, 687 [1984]; *People v Baldi,* 54 NY2d 137, 147 [1981]). Trial counsel made motions for bail, to change venue, to suppress defendant's statement and to vacate defendant's conviction. He made an extensive omnibus motion and conducted pretrial discovery. He participated in an extensive *Huntley* hearing, thoroughly cross-examined witnesses, both at the hearing and at trial, and called witnesses in defense, both at the hearing and trial. Notably, defendant was acquitted on several charges, including two counts of intentional murder in the second degree (*see People v McLean,* 243 AD2d 756, 758 [1997], *lv denied* 91 NY2d 928 [1998]).

With respect to defendant's CPL article 440 motion also alleging ineffective assistance of counsel, we find that County Court (Eidens, J.) properly denied said motion without a hearing. "CPL 440.30 contemplates that a court will in the first instance determine on written submissions whether the motion can be decided without a hearing. Defendant must show that the nonrecord facts sought to be established are material and would entitle him to relief" (*People v Satterfield,* 66 NY2d 796, 799 [1985] [citations omitted]). "In a *coram nobis* application, it is not enough to make conclusory allegations of ultimate facts; supporting evidentiary facts must be provided" (*People v Session,* 34 NY2d 254, 256 [1974]). On the motion, defendant presented insufficient evidence of the existence of a mental disease or defect that would sustain such a defense. Furthermore, at trial, defendant based his defense on proof that his codefendant shot the victims. This defense was consistent with defendant's oral and written statements, as well as the testimony of the only eyewitness to the shooting. Defenses of

extreme emotional disturbance and mental disease or defect would have been inconsistent with defendant's trial strategy since it would have required defendant to admit he shot the victims. Defendant's claim that trial counsel failed to discuss or consider these defenses is belied by the affidavit of defendant's mother in which she states that defense counsel was well aware of defendant's prior counseling and mental health problems. An examination of the record and defendant's moving papers reveals that the claimed ineffective assistance is nothing more than defendant's dissatisfaction with trial tactics which terminated unsuccessfully (*see People v Baldi, supra* at 146). Defendant's motion papers further fail to demonstrate how counsel's post-trial circumstances affected his trial performance nor do they demonstrate defendant's entitlement to a missing witness charge with respect to the People's failure to call one of defendant's girlfriends.

Finally, given this senseless and brutal slaying of two women, one of whom was pregnant at the time of her death, in front of a young child, defendant's consecutive sentences were not an abuse of discretion (*see People v Mitchell,* 289 AD2d 776, 780 [2001], *lv denied* 98 NY2d 653 [2002]), nor has defendant shown extraordinary circumstances warranting modification. We have reviewed defendant's remaining contentions and find them to be without merit.

Cardona, P.J., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment and order are affirmed.