David POLICANO, Petitioner–Appellee,

v.

Victor T. HERBERT, Respondent–Appellant.

Docket No. 04–5518–PR.

United States Court of Appeals, Second Circuit.

Argued: July 11, 2005.

Decided: Nov. 15, 2005.

Rhea A. Grob, Assistant District Attorney (Charles J. Hynes, District Attorney Kings County, Leonard Joblove & Ann Bordley, Assistant District Attorneys, of counsel), Brooklyn, NY, for Respondent–Appellant.

Richard Ware Levitt, New York, NY, for Petitioner–Appellee.

Before: POOLER and SACK, Circuit Judges, and GARAUFIS, District Judge.*

SACK, Circuit Judge.

On January 21, 1997, during a fight, Terry Phillips struck the petitioner, David Policano, in the face with a metal pipe. Policano required fifteen stitches and was hospitalized. While in the hospital, Policano told a police officer that he would "take care of this" himself. Six days later, Policano approached Phillips at a bus stop and shot him at close range, three times in the head and neck and once in the leg, killing him.

Policano was identified by an eyewitness as the perpetrator. He was apprehended and charged with alternative counts of depraved-indifference murder and intentional murder pursuant to N.Y. Penal Law § 125.25. Under New York law, to be guilty of depraved-indifference murder, the defendant must have, *inter alia*, acted recklessly with respect to causing the victim's death. *Id.* § 125.25(2). To act recklessly under New York Law, the defendant must have "consciously disregard[ed]" the risk that his actions would cause the victim's death. *Id.* § 15.05(3).

A Kings County Supreme Court jury found Policano guilty of depraved indifference murder. After exhausting available state appellate remedies, Policano petitioned for a writ of habeas corpus in the United States District Court for the East-

ern District of New York. Policano asserted, *inter alia*, that the evidence supported a single rational inference: that if he murdered Phillips, he did so intentionally. He contended that the evidence was therefore insufficient to support a jury's finding that he had acted recklessly in causing Phillips's death. The district court (John Gleeson, *Judge*) granted Policano's petition. We now affirm.

## BACKGROUND

On a petition for habeas corpus we "view[ ] the evidence [in the trial record] in the light most favorable to the prosecution." *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995) (internal quotation marks and citations omitted). We therefore state the facts underlying this appeal in the light most favorable to the prosecution. Unless otherwise noted, however, the parties do not dispute the relevant facts on appeal.

On January 21, 1997, Policano and Phillips became involved in a violent fight during the course of which Phillips struck Policano in the face with a metal pipe. As a result, Policano required hospitalization and received fifteen stitches.

While he was in the hospital, Policano was interviewed by New York City Detective Alonzo Hobbs. Detective Hobbs testified at trial that Policano informed him that Policano and Phillips had been in another fight earlier that day in which Policano had punched Phillips, causing him to lose consciousness. Hobbs further testified that Policano, who appeared angry and in pain, indicated that he did not want

* The Hon. Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

police intervention in his dispute with Phillips. He would "take care of" matters himself. Tr. at 240, 250. Subsequently, however, Policano filed a complaint with the police department against Phillips.

Lonny Stagg, a friend of Phillips who also was acquainted with Policano, testified at trial that he spent time with Policano on January 24, 1997, three days after the fight. There were two other men present. Stagg testified that Policano remained upset with Phillips and wanted Stagg to pass along a message to Phillips. Stagg refused to do so, not wanting to become embroiled in the conflict.

Three days later, on January 27, 1997, Policano and Phillips crossed paths again. Sometime before 8 p.m., Policano and a friend of Policano's, Neicy Wright, went to the apartment of Jimmy Sprye in the Fort Greene neighborhood of Brooklyn. The apartment was some fifteen-minutes away by foot from the corner of Carlton and Myrtle Avenues. Sprye testified that when Policano and Wright arrived at Sprye's apartment, the three shared a "dime bag" of crack cocaine. Policano and Wright then used Sprye's apartment as a base from which to sell bathrobes at nearby locations. Policano testified at trial that Wright accompanied him on all but one of the many trips he made from the apartment to sell the robes.

Stagg testified at trial that on that same night he and Phillips went for a walk through the neighborhood, eventually arriving at a bus stop on the corner of Myrtle and Carlton Avenues. At around 8:45 p.m., Stagg was reading a bus schedule inside the shelter at the bus stop. Phillips stood at the curb. Stagg looked up from the schedule toward Phillips and saw Policano approaching from across Carlton Avenue. Policano was wearing a dark colored jacket with white stripes on the sleeves. Stagg and Policano did not acknowledge each other. Stagg returned to reading the bus schedule.

Several seconds later, Stagg heard a gun shot. He ran about fifty feet from the shelter before turning to look back. When he did, he saw Phillips with his arms raised in front of his face. Stagg ran a few more feet away and turned again toward the bus stop. He heard a second shot. Stagg could see the right hand of a man wearing what appeared to him to be Policano's jacket pointing a pistol toward Phillips. Stagg ran still further away and heard a third shot. When he looked back this time, Phillips had fallen to the ground. Stagg ran into a nearby pizzeria to call the police.

Phillips sustained two gunshot wounds to his head, one to his neck, and a fourth to his right thigh. A forensics expert later determined that the gunshot wounds to his head and neck were consistent with Phillips having been shot while standing.[1] The leg wound was consistent with Phillips having been shot while he was lying on the ground.

Later, at Sprye's apartment, Policano told Wright and Sprye that he had witnessed a shooting during his one excursion to sell bathrobes from the apartment without Wright.

Two days later, on January 29, 1997, Stagg went to the local precinct station and identified Policano as the man who had shot Phillips. Policano was arrested and charged with two counts of second degree murder: one count of depraved-indifference murder, N.Y. Penal Law

---

1. Dr. Beverly Leffers, a forensic pathologist from the Office of the Medical Examiner, was called as an expert witness by the State. Policano did not object to her qualification as an expert.

§ 125.25(2), and, in the alternative, one count of intentional murder. *Id.* § 125.25(1).

Beginning on February 19, 1998, Policano was tried on the murder charges in Supreme Court, Kings County. At trial, the defense moved to dismiss the depraved-indifference murder count, both at the end of testimony and after summations. The prosecution opposed both motions, and the court denied them. The court submitted both murder counts to the jury, instructing them that if they convicted Policano of depraved indifference murder, they should not consider the charge of intentional murder. The jury returned a verdict of guilty on the depraved-indifference murder count but did not reach the intentional murder count.

Policano's conviction was affirmed by the Appellate Division, Second Department, in a brief order. *People v. Policano,* 277 A.D.2d 331, 715 N.Y.S.2d 880 (2d Dep't 2000). His application for permission to appeal the Appellate Division's decision to the New York Court of Appeals was denied. *People v. Policano,* 96 N.Y.2d 786, 725 N.Y.S.2d 651, 749 N.E.2d 220 (2001) (Smith, *J.*).

In early 2002, Policano filed a pro se habeas corpus application, under 28 U.S.C. § 2254, in the United States District Court for the Eastern District of New York. Proceedings were stayed to allow Policano to exhaust a claim of ineffective appellate counsel in state court; they reopened in March 2003, after Policano had done so. In his habeas petition, Policano argued, *inter alia,* that there was insufficient evidence to sustain his conviction for depraved indifference murder and that his judgment therefore violated the due process guarantee of the Fourteenth Amendment. The district court agreed and granted the petition.

The State appeals.

## DISCUSSION

### I. Standard for Habeas Corpus

█ The Antiterrorism and Effective Death Penalty Act (AEDPA) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' ... refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court has held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254[,] ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Einaugler v. Supreme Court,* 109 F.3d 836, 839–40 (2d Cir.1997) (quoting *Jackson* ). Policano's sufficiency challenge is thus a cognizable claim under AEDPA.

■ "We review *de novo* a district court's decision to grant or deny habeas corpus relief and review findings of fact for clear error." *Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir.2005) (citation omitted). "The standard of review of a sufficiency claim by a federal habeas court is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir.1994)(quoting *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781 (emphasis deleted)), *cert. denied,* 514 U.S. 1066 (1995).

## II. Policano's Habeas Corpus Application

### A. New York State Statutory Framework: Depraved Indifference Murder and Intentional Murder

■ "When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir.2000) (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied,* 528 U.S. 1170, 120 S.Ct. 1196, 145 L.Ed.2d 1100 (2000)(alteration in original)).

■ Under New York law, both depraved-indifference murder and intentional murder constitute murder in the second degree and carry the same penalties. N.Y. Penal Law § 125.25. A defendant may be found guilty of depraved-indifference murder where, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." *Id.* § 125.25(2).

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

*Id.* § 15.05(3). It is thus an element of depraved-indifference murder that the defendant was indifferent to whether his or her acts would result in the victim's death.

To be guilty of intentional murder under New York law, by contrast, a defendant must "[w]ith intent to cause the death of another person, ... cause[ ] the death of such person or of a third person." N.Y. Penal Law § 125.25(1). "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." *Id.* § 15.05(1).

In 1987, in *People v. Gallagher,* 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987), the New York Court of Appeals clarified that a defendant cannot be convicted of *both* depraved indifference murder and intentional murder. The court held that if depraved-indifference and intentional murder were both charged, they must be charged in the alternative because:

One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result (Penal Law § 15.05[1] )—cannot at the same time act recklessly—that is, with conscious disregard of a substantial

and unjustifiable risk that such a result will occur (Penal Law § 15.05[3] ). The act is either intended or not intended; it cannot simultaneously be both. Thus, where the shooting (the act) and the death (the result) are the same, a defendant cannot be convicted twice for the murder, once for acting "intentionally" and once for acting "recklessly."

*Id.,* 69 N.Y.2d at 529, 516 N.Y.S.2d at 175, 508 N.E.2d at 910. Subsequent cases have affirmed this principle.[1] *See, e.g., People v. Payne,* 3 N.Y.3d 266, 270, 786 N.Y.S.2d 116, 117, 819 N.E.2d 634, 635 (2004) (reversing conviction for depraved indifference murder where "the evidence established defendant's intent to kill"); *People v. Gonzalez,* 1 N.Y.3d 464, 467, 775 N.Y.S.2d 224, 226, 807 N.E.2d 273, 275 (2004) (affirming reversal of conviction for depraved indifference murder where defendant shot victim ten times at close range because "defendant was guilty of an intentional shooting or no other"); *cf. People v. Sanchez,* 98 N.Y.2d 373, 378, 748 N.Y.S.2d 312, 314; 777 N.E.2d 204, 206 (2002) (affirming depraved-indifference conviction where "a jury reasonably could have found that defendant's homicidal level of mental culpability was reckless rather than intentional"); *People v. Ochoa,* 142 A.D.2d 741, 741–42, 531 N.Y.S.2d 124, 124–25 (2d Dep't 1988) (concluding that the trial court did not err in refusing to charge jury on manslaughter as a lesser included offense because evidence that "the defendant deliberately and repeatedly fired a gun into the victim's upper body from close range ... precluded a reasonable jury from finding that the defendant had acted recklessly").

As the New York Court of Appeals has pointed out, "depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York" because the facts in such cases usually evince "a manifest intent to kill." *Payne,* 3 N.Y.3d at 270–71, 819 N.E.2d at 635–36, 786 N.Y.S.2d at 117–18. Nevertheless, the prosecution charged Policano in the alternative with intentional and depraved indifference murder, and the trial court instructed the jury that it need not reach intentional murder if it found him guilty of depraved-indifference murder,[2] which it did. Those decisions opened the door for Policano to challenge the sufficiency of the evidence for a finding of depraved-indifference murder.

## B. Sufficiency of the Evidence in the Instant Case

█ The district court concluded that Policano's petition for habeas corpus must be granted because "according to the evidence, he intentionally committed [Phillips's homicide] if he committed it at all." *Policano v. Herbert,* 2004 WL 1960203, at

---

1. As we discuss further in section II.C.5 of this opinion, below, we cite cases decided after Policano's trial and appeal because they explain and reaffirm the principles of New York law that were clearly established at the time of the trial.

2. The prosecution may have misunderstood the meaning of "recklessness." In summation, it argued that it had met its burden of proving recklessness because "defendant repeatedly fired shots in the direction of another individual causing his death." Tr. at 545.

As the Appellate Division pointed out in *Ochoa,* however, a finding that "the defendant *deliberately* and repeatedly fired a gun into the victim's upper body from close range ... preclude[s] a reasonable jury from finding that the defendant had acted recklessly." 142 A.D.2d at 741–42, 531 N.Y.S.2d at 125 (emphasis added). The prosecution's argument appears to omit from its discussion of recklessness any reference to the defendant's mental state, i.e., his disregard for the consequences of his actions.

*2 (E.D.N.Y. Sept. 7, 2004), 2004 U.S. Dist. LEXIS 17785 at *4. We agree.

Policano does not contest on appeal the jury's finding that he murdered Phillips.[3] Policano shot Phillips twice in the back of the head, once in the neck, and then once in the leg. The shooting took place six days after Policano and Phillips had had a fight in which Phillips struck Policano in the face with a pipe, sending him to the hospital for fifteen stitches. The State asserts that Policano told New York City Police Officer Hobbs that he "would take care of" the matter himself and did not require police involvement. Tr. at 240, 250. It is undisputed that when Stagg and Policano met three days after the argument, Policano expressed continuing anger about the incident and attempted to send Phillips a message about it through Stagg, who refused to act as an intermediary. According to Stagg's description of the shooting, Policano crossed Carlton Avenue to reach Phillips. When Policano arrived there, he did not fire randomly or attempt to fire at Stagg. Instead, he shot and killed Phillips at point-blank range.

This evidence plainly supports a rational finding by the jury that Policano's "conscious objective [wa]s to cause" Phillips's death. N.Y. Penal Law § 15.05(1). As the district court pointed out, by shooting Phillips three times in the head and neck, Policano "was not recklessly creating a grave risk of death, but was creating a virtual certainty of death born of an intent to kill." *Policano*, 2004 WL 1960203, at *9, 2004 U.S. Dist. LEXIS 17785, at *20, (quoting *Gonzalez*, 1 N.Y.3d at 468, 775

N.Y.S.2d at 227, 807 N.E.2d at 276) (internal quotation marks omitted).

Conversely, the evidence does *not* support a rational finding by a jury that Policano's firing of a nine-millimeter gun three times into Phillips's head and neck from close range was an act of "conscious[ ] disregard" of the risk that Phillips would die as a result. N.Y. Penal Law § 15.05(3). There is no evidence in the record that Policano meant to threaten or frighten Phillips, that the gun fired accidentally, or that Policano acted otherwise than with the deliberate intent to kill.

We agree with the district court, then, that the facts of this case are not materially different from those of *Gonzalez*. There, the defendant shot the victim once in the chest from a distance of six to seven feet, once in the head as the victim fell to the ground, and eight times in the back and head once the victim was on the ground. The defendant warned the only other person present at the shooting to remain silent about the incident and then left the scene of the crime. In a written statement, the defendant asserted that the victim had repeatedly threatened him because the victim believed that he had raped the victim's niece. *Gonzalez*, 1 N.Y.3d at 465–66, 775 N.Y.S.2d at 225–26, 807 N.E.2d at 274–75.

The *Gonzalez* court affirmed the decision of the Appellate Division to reverse the defendant's conviction for depraved-indifference murder. In doing so, it noted that it is an element of that crime that the perpetrator is "indifferent to whether death will likely result from his or her conduct." *Id.*, 1 N.Y.3d at 467, 775 N.Y.S.2d at 227, 807 N.E.2d at 276. The

---

**3.** The petitioner proffered a defense of misidentification at trial, and maintained as an alternative basis for granting his habeas corpus petition, that there was insufficient evidence to support a rational finding that he

committed the homicide at all. *See Policano*, 2004 WL 1960203, at *9–*10, 2004 U.S. Dist. LEXIS 17785, at *27–*30. Both arguments were unsuccessful.

court concluded that "[t]he only reasonable view of the evidence ... was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground." *Id.*, 775 N.Y.S.2d at 226, 807 N.E.2d at 275. It reasoned that "where ... a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct."[4] *Id.*, 775 N.Y.S.2d at 227, 807 N.E.2d at 276.

We emphasize that our conclusion that the State's proof of intentional murder was inconsistent with proof of depraved-indifference murder rests on the *specific facts of this case*. There have been other cases in which the evidence could have supported a finding of *either* intentional or depraved indifference murder. In such cases, a conviction on either charge would have therefore been justifiable.

In *People v. Tankleff*, 199 A.D.2d 550, 606 N.Y.S.2d 707 (2d Dep't 1993), for example, the defendant beat and stabbed his mother, who died immediately, and then beat and stabbed his father, who died the next day. Tankleff was convicted of intentional murder for the homicide of his father and depraved-indifference murder for the homicide of his mother. The Appellate Division upheld the defendant's depraved-indifference murder conviction even though it concluded that "the evidence presented by the prosecution is far more consistent with the conclusion that he intended to kill his mother than with the jury's conclusion that he killed her recklessly." *Id.*, 199 A.D.2d at 554, 606 N.Y.S.2d at 710. The court determined that the jury's conclusion was rational even if it was not the one that the court would have made; that is, even if the jury might well have decided on the same evidence that both murders were intentional. *Id.* The court rejected the defendant's challenge to the sufficiency of the evidence underlying his conviction for depraved-indifference murder.

In *Sanchez*, the defendant and the victim, who were the boyfriends of two sisters, exchanged heated words and scuffled after the victim accused the defendant of being unfaithful in his relationship. *Sanchez*, 98 N.Y.2d at 375–76, 748 N.Y.S.2d at 313, 777 N.E.2d at 205. Until then, the two men had been on friendly terms. The victim asked the defendant to "step outside" and was standing behind a partially opened door in the apartment's foyer when the defendant, who was walking through the doorway and away from the victim, suddenly turned and fired a gun at the victim from behind the door. The bullet struck the chest of the victim, who later died. *Id.*

The Court of Appeals concluded that "a rational jury could harbor a reasonable doubt that the homicide ... was intentional" based on the suddenness of the homicide, the fact that the two men were friends until that point, and its conclusion that the shooting "was not well-designed to cause imminent death." 98

---

4. Similarly, in *People v. Payne, supra*, New York Court of Appeals reversed the defendant's conviction for depraved-indifference murder where the defendant went to the victim's home and shot him with a twelve-gauge shotgun. The defendant had become "infuriated" when, after the defendant had instructed the victim never to communicate with the defendant's girlfriend, the victim called her to complain about the defendant's dog and acted belligerently toward her. 3 N.Y.3d at 269, 786 N.Y.S.2d at 117, 819 N.E.2d at 635. In that state of mind, the defendant retrieved his "elephant gun" and went next-door to his former friend's home, where he shot him at point-blank range. *Id.* The Court of Appeals concluded that such a shooting could not constitute depraved-indifference murder because "[t]he use of a weapon can never result in depraved indifference murder when, as here, there is a manifest intent to kill." *Id.* at 271, 786 N.Y.S.2d at 118, 819 N.E.2d at 636.

N.Y.2d at 377, 748 N.Y.S.2d at 313–14, 777 N.E.2d at 205–06. The court noted that "[a]lthough the gun was discharged at point-blank range, the bullet only struck [the victim] in his upper left chest" and concluded that "[t]he jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an instantaneous, impulsive shooting—perhaps to disable or frighten [the victim], rather than to kill him." *Id.*, 98 N.Y.2d at 377–78, 748 N.Y.S.2d at 314, 777 N.E.2d at 206. We read *Sanchez*, like *Tankleff,* to hold that the evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim even if it might, on the same facts, properly conclude that the murder was intentional.

In *Fama,* we employed a similar approach in concluding that evidence at trial was sufficient to support a depraved-indifference murder conviction. There, the "evidence demonstrate[d] that [the defendant] intended to *shoot* [the victim], but [did] not *necessarily* show that he intended to *kill* him." *Fama,* 235 F.3d at 812 (second emphasis added).

By contrast, Policano's actions in firing a nine-millimeter gun three times at Phillips's head and neck from point-blank range was "well-designed to cause imminent death." *Sanchez,* 98 N.Y.2d at 377, 777 N.E.2d at 206, 748 N.Y.S.2d at 314. Here, there is no doubt that the defendant intended to kill his victim.

### C. The State's Other Arguments on Appeal

The State nonetheless argues that the evidence was sufficient to support a rational inference that Policano did not intend to kill Phillips.

■ *1. Intoxication.* The State contends that a rational juror could have inferred that Policano was indifferent to whether he killed Phillips because he was high on crack. As we have noted, Sprye testified at trial that he, Wright, and Policano shared a "dime bag" of crack cocaine when Wright and Policano arrived at Sprye's apartment sometime before 8 p.m. on the night of the murder. The State does not point to, nor are we otherwise aware of, any evidence in the record to justify an inference that such an exposure to drugs would have so intoxicated Policano forty-five minutes or more later that he could have shot Phillips three times in the head at close range without meaning to kill him. We therefore reject the state's argument in this regard.

■ *2. The Fourth Shot.* The State argues that a rational trier of fact could have concluded that Policano did not intend to kill Phillips because Policano's fourth shot was to Phillips's leg. The State contends that if Policano intended to kill Phillips, Policano would have used the fourth bullet to shoot him in the head instead of the leg. We do not find this argument persuasive. Policano did shoot Phillips three times in the head and neck at close range. We may not know why Policano fired another shot into Phillips's leg, but that is not evidence that Policano fired the first three shots without an intent to kill his victim.

*3. Comparison to Tankleff.* The State asserts that the Second Department upheld a depraved-indifference murder conviction on facts in *Tankleff* that were "far more compelling" of intentional murder. Appellant's Br. at 39. We have explained in our discussion of *Tankleff* in section II.B. of this opinion, above, that the facts of Tankleff could have supported an inference of either intentional or reckless murder. The facts of this case do not.

*4. Other Case Law.* The State cites a number of cases that, it contends, repre-

sent instances in which the New York courts have upheld depraved-indifference murder convictions on similar facts.[5] These case are either plainly inapposite or do not recite sufficient facts to determine whether they are relevant or not. *See People v. Johnson,* 87 N.Y.2d 357, 359, 639 N.Y.S.2d 776, 662 N.E.2d 1066 (1996) (reciting no facts other than that the defendant shot the victim during an altercation); *People v. Baptiste,* 306 A.D.2d 562, 760 N.Y.S.2d 594 (2003) (the victim fought with the defendant, he pushed her into a car, she drove away and then came back towards him, at which point he fired bullets into the car); *People v. Smith,* 255 A.D.2d 404, 680 N.Y.S.2d 556 (2d Dep't 1998) (the defendant fired a gun not knowing that it was loaded); *People v. Dellemand,* 205 A.D.2d 551, 613 N.Y.S.2d 195 (2d Dep't 1994) (the recitation of the facts do not make clear whether the defendant knew that the gun he fired was loaded); *People v. Santana,* 163 A.D.2d 495, 558 N.Y.S.2d 172 (2d Dep't 1990) (the facts supported a rational conclusion that the gun discharged during a struggle without the defendant so intending). None of these cases contradicts the clearly established principle of New York law that one who intentionally kills cannot be guilty of depraved-indifference murder.

■ *5. Applicability of Post–Conviction and Post–Appeal Case Law.* The State argues that the district court was wrong to consider *Gonzalez* and *Payne* because those cases were decided after the Appellate Division affirmed Policano's conviction. The State contends that the district court may only look to state law that was in effect at the time of the decision from which relief is sought. As discussed above, however, the rule that depraved-indifference murder and intentional mur-

der are mutually exclusive crimes was established well before Policano's trial and state appeal. *See Gallagher,* 69 N.Y.2d at 529, 516 N.Y.S.2d at 175, 508 N.E.2d at 910. *Gallagher* set forth clearly the standard we apply today, stating in plain language that a defendant has not committed depraved indifference murder if he "acts intentionally in shooting a person to death." *Id.*

*Gonzalez* and *Payne* represent not the creation of a new legal principle, but the application of long-settled New York law to new facts. The district court properly used them, as do we, as a means of understanding the applicable law as it existed at the time of Policano's trial and appeal.

■ *6. Federal Claim on Habeas Corpus Application.* The State asserts that the district court erred in considering *People v. Payne, supra,* because it addresses an issue solely of state law. The State is correct in contending that the district court may only grant the petition for the writ of habeas corpus if the prisoner is incarcerated contrary to federal law. *See* 28 U.S.C. § 2254(d); *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. The federal issue here is whether the Due Process Clause of the Fourteenth Amendment of the United States Constitution has been violated by a conviction that is not supported by sufficient evidence. *See Fama,* 235 F.3d at 811; *accord Einaugler,* 109 F.3d at 839–40. State law determines the elements of a crime that must be supported by sufficient evidence to satisfy constitutional due process. *See Fama,* 235 F.3d at 811. The district court therefore correctly turned to New York State law to determine whether Policano was incarcerated in violation of the federal Constitution's guarantee of due process of law.

\*  \*  \*  \*  \*  \*

---

5. The Court has received and considered letters containing post-briefing authority submitted by both parties pursuant to Fed. R.App. Proc. 28(j).

The result of these habeas corpus proceedings is, of course, disturbing. The defendant is set free *because* he meant to kill his victim.[6] But as we recently observed,

A system of law that not only makes certain conduct criminal, but also lays down the rules for the conduct of authorities, often becomes complex in its application to individual cases, and will from time to time produce imperfect results, especially if one's attention is confined to the particular case at bar. Some criminals do go free because of the necessity of keeping government and its servants in their place. That is one of the costs of having and enforcing a Bill of Rights. This country is built on the assumption that the cost is worth paying, and that in the long run we are all both freer and safer if the Constitution is strictly enforced.

*Zappulla v. New York,* 391 F.3d 462, 475 (2d Cir.2004) (quoting *Williams v. Nix,* 700 F.2d 1164, 1173 (8th Cir.1983) (Richard S. Arnold, *J.*)), *cert. denied,* 2005 WL 2494212, 74 U.S.L.W. 3230 (Oct. 11, 2005), 2005 U.S. LEXIS 7626. We are bound by the law of New York and by federal constitutional law. We do not have the power to undo the choices that the prosecutors and trial judge made in the course of Policano's prosecution.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

**6.** Policano may also be secure from future prosecution on the intentional murder count on double jeopardy grounds. *Policano v. Herbert,* 2004 WL 1960203, at *2, 2004 U.S. Dist.

LEXIS 17785 at *4 ("Since double jeopardy principles preclude a retrial on the intentional murder charge, the killer walks free").