04-5518-pr
Policano v. Herbert

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2004

(Argued: July 11, 2005          Final Submission:  June 4, 2007

Decided:  September 19, 2007)

Docket No. 04-5518-pr

-------------------------------------

DAVID POLICANO,

Petitioner-Appellee,

- v -

VICTOR T. HERBERT,

Respondent-Appellant.

-------------------------------------

Before:    POOLER and SACK, Circuit Judges, and GARAUFIS, District Judge.[*]

The United States District Court for the Eastern District of New York (John Gleeson, Judge) granted the petitioner habeas corpus relief under 28 U.S.C. § 2254 on the ground that the state violated his constitutional right to due process because the evidence of his guilt was insufficient to support his conviction in New York Supreme Court, Kings County for depraved

---

[*]   The Hon. Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

indifference murder under N.Y. Penal Law § 125.25(2).  In an earlier opinion, Policano v. Herbert, 430 F.3d 82 (2d Cir. 2005), this panel concluded that the judgment of the district court should be affirmed.  In light of the answer of the New York Court of Appeals to a question of law subsequently certified to it by this Court, as well as other factors, that opinion is withdrawn, and the judgment of the district court is:

Reversed, and the case remanded.

RHEA A. GROB, Assistant District Attorney (Charles J. Hynes, District Attorney Kings County, Leonard Joblove & Ann Bordley, Assistant District Attorneys, of counsel), Brooklyn, NY, for Respondent-Appellant.

Richard Ware Levitt, New York, NY, for Petitioner-Appellee.

SACK, Circuit Judge:

I.

David Policano, acting pro se, brought this application for habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York.  He sought relief from his conviction in New York Supreme Court, Kings County, of depraved indifference murder under N.Y. Penal Law § 125.25(2).  The conviction had been affirmed in the state courts by the Appellate Division.  People v. Policano, 277 A.D.2d 331, 715 N.Y.S.2d 880 (2d Dep't 2000).  His application for permission to appeal that decision to the New York Court of

Appeals had been denied. People v. Policano, 96 N.Y.2d 786, 749 N.E.2d 220, 725 N.Y.S.2d 651 (2001) (Smith, J.).

It was undisputed at trial that Policano had threatened to retaliate against one Terry Phillips after Phillips hit Policano in the head with a metal pipe, sending him to the hospital. On the evening of January 27, 1997, just six days after the incident, at a neighborhood bus stop, Phillips was shot at close range, three times in the head and neck, and once in the leg, killing him. One witness to the event, who knew both Policano and Phillips, testified that he saw Policano at the scene and at the time of the shooting. Although the witness could not see Policano's face at the moment of the shooting, he identified Policano on the basis of his presence there and his clothing. Two other witnesses said they saw a person running from the scene carrying a white bag. They described that person as, inter alia, slender and a dark-skinned black man. Policano was neither. Policano testified in his own defense, among other things, that he was elsewhere at the time of the crime.

The trial judge charged the jury, inter alia:

> As you have become aware during the course of this trial a main issue in this trial is the identification of the defendant, David Palicano [sic],[1] as the person who committed the crimes of murder second degree on or about January 27, 1997. The People have the burden to prove to your satisfaction beyond a reasonable doubt not only all of the essential element[s] of the crime as I have

---

[1] The defendant was referred to as "Palicano" throughout the trial transcript, until sentencing.

3

instructed you, but also that the defendant, David Palicano, is the person who committed them.

Trial Tr. at 561.

The court, over the objection of the defendant, who had sought dismissal of the depraved indifference count, instructed the jury at some length as to the elements of depraved indifference murder, under the first count in the indictment, concluding: "On [the] other hand, if you find that the People have not proven beyond a reasonable doubt any one or more of those elements, you must find the defendant not guilty of the crime of murder in the second degree as charged in the first count." Id. at 569. The court then instructed the jury on count two, intentional murder in the second degree. Id. at 569-71.

After several hours of deliberation, the jury returned a verdict of guilty on count one, depraved indifference. Id. at 574-75. The jurors were polled, id. at 575-76, and then excused, id. at 576-77. They did not render a verdict on count two, the intentional murder count.

II.

After appointing counsel to represent Policano and having received briefing and argument, the district court (John Gleeson, Judge) granted Policano's petition for habeas relief. Policano v. Herbert, 2004 WL 1960203, 2004 U.S. Dist. LEXIS 17785 (E.D.N.Y. Sept. 7, 2004) ("Policano I"). In Policano v. Herbert, 430 F.3d 82 (2d Cir. 2005) ("Policano II"), an opinion in which we affirmed the judgment of the district court, we summarized:

4

"The district court concluded that Policano's petition for habeas corpus must be granted because 'according to the evidence, he intentionally committed [Phillips's homicide] if he committed it at all.'  We agree."  430 F.3d at 88-89 (quoting Policano I, 2004 WL 1960203, at *2, 2004 U.S. Dist. LEXIS 17785, at *4).  In doing so, we concluded that under New York State law,

> the rule that depraved-indifference murder and intentional murder are mutually exclusive crimes was established well before Policano's trial and state appeal.  See [People v. Gallagher, 69 N.Y.2d 525, 529, 516 N.Y.S.2d 174, 175, 508 N.E.2d 909, 910 (1987)].  Gallagher set forth clearly the standard we apply today, stating in plain language that a defendant has not committed depraved indifference murder if he "acts intentionally in shooting a person to death." Id.

430 F.3d at 92.

In the course of considering the appeal, we noted that one of the respondent's arguments had been made for the first time before us on appeal -- that the depraved indifference murder charge was buttressed by eyewitness trial testimony to the effect that shortly before the Phillips murder, Policano had shared a "dime [ten dollar] bag" of "crack" cocaine with two other people.[2]  Applying Gallagher, however, we could not find "any

---

[2]  The evidence was contained in testimony elicited in response to questions by Policano's lawyer during the cross-examination of witness Jimmy Sprye, in whose Fort Greene apartment Policano spent part of the evening of the murder.

    Q:  When they [Policano and a woman] came in, you started smoking crack?
    A:  That's what that day [sic], yeah.
    Q:  How long are you smoking crack before they

5

evidence in the record to justify an inference that such an exposure to drugs would have so intoxicated Policano forty-five minutes or more later that he could have shot Phillips three times in the head at close range without meaning to kill him. We therefore reject[ed] the state's argument in this regard." Id. at 91.

The mandate in Policano II never issued. Instead, on June 21, 2006, we certified to the New York Court of Appeals principally the following question:

> On March 30, 2001 (the date on which petitioner Policano's conviction became final), under the law of the State of New York as established by, inter alia, People v. Gallagher, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987), where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim, would a jury be permitted to find that the elements of depraved indifference murder were satisfied beyond a reasonable doubt?

---

left?

A: Before they left, I don't know. They had dimes, dime bag. Three people on a dime bag, how much can you, I mean, how much can you smoke?

Trial Tr. at 277-78.

*Policano v. Herbert*, 453 F.3d 75, 76 (2d Cir. 2006).[3]  On the same day, based largely on the fact of certification, this Court denied rehearing en banc, *Policano v Herbert*, 453 F.3d 79 (2d Cir 2006) (per curiam), with five judges dissenting from the denial, *see id.* at 80 (Raggi, J., joined by Walker, C.J., Jacobs, Cabranes, and Wesley, JJ., dissenting); *id.* at 98 (Wesley, J., joined by Raggi, J., dissenting).

                                    III.

          In *Policano v. Herbert*, 7 N.Y.3d 588, 859 N.E.2d 484, 825 N.Y.S.2d 678 (2006) ("*Policano III*"), the New York Court of Appeals responded to our certification.  The Court explained that our reliance on both *Gallagher* and the Court's 2004 decision in *People v. Gonzalez*, 1 N.Y.3d 464, 468, 807 N.E.2d 273, 276, 775 N.Y.S.2d 224, 227 (2004), had been mistaken.

> [At the relevant time,] *Gallagher* was read as
> limited to charging procedure.  Indeed, we
> said as much ourselves in [*People v. Sanchez*,
> 98 N.Y.2d 373, 378, 748 N.Y.S.2d 312, 314,

---

[3]  The other questions we certified were:

> 2. At the time Policano's conviction became
> final, what were the established elements of
> depraved indifference murder?

> 3. Does the interpretation of N.Y. Penal Law
> § 125.25(1) and (2) set forth in *People v.
> Payne*, 3 N.Y.3d 266, 270, 819 N.E.2d 634, 786
> N.Y.S.2d 116, 117 (2004) and *People v.
> Gonzalez*, 1 N.Y.3d 464, 467, 807 N.E.2d 273,
> 775 N.Y.S.2d 224, 226 (2004), state the
> correct interpretation of the law of New York
> with respect to the elements of depraved
> indifference murder on the date Policano's
> conviction became final?

*Id.*

777 N.E.2d 204, 206 (2002)] when we concluded that strong proof of intent did not foreclose the jury from finding recklessness and depraved indifference. Even though the defendant in Sanchez pressed arguments of legal insufficiency based on Gallagher, the Sanchez majority did not mention Gallagher.

Id. at 600 (internal citations altered and omitted). At the time the defendant's conviction became final, it was People v. Register, 60 N.Y.2d 270, 457 N.E.2d 704, 469 N.Y.S.2d 599 (1983), cert. denied, 466 U.S. 953 (1984), -- not Gallagher -- that governed the legal sufficiency of the evidence needed to establish guilt for depraved indifference murder. Policano III, 7 N.Y.3d at 601. The formulation of the law established by Register "remained static through [the Court's] decision in [Sanchez]." Id. at 595. Sanchez therefore "reaffirmed Register." Id. The Court also explained that by the time of its 2004 post-Sanchez decision in Gonzalez, on which we and the district court had relied, the relevant law had begun to change. Id. at 603. Gonzalez, like Gallagher, therefore did not reflect the applicable law for purposes of Policano's petition.

The Court of Appeals explained further:

[I]t has never been permissible in New York for a jury to convict a defendant of depraved indifference murder "where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim" (in the words of the first [and principal] question). As discussed at some length, however, under Register -- and until we started to recast "under circumstances evincing a depraved indifference to human life" post-Sanchez -- where both intentional and depraved

8

indifference murder were charged in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally. That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary and as the dissenters in both Register and Sanchez vociferously protested, under the Register formulation the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent -- for example, a point-blank shooting of the victim in the head -- likewise demonstrated depraved indifference. This was the law of the State of New York at the time defendant's conviction became final.

Id. at 600-01.

The Court of Appeals continued,

As the People point out, the jurors heard evidence that defendant ingested crack cocaine approximately 45 minutes before shooting Phillips, and that the final shot to his helplessly prone victim hit his thigh, not a vital organ. Although there was certainly reason to believe that defendant may have borne a grudge against Phillips, there is considerable doubt that he acted with premeditation or sought out Phillips to seek revenge (a factual distinction between this case and Gonzalez bearing on intent); the violence here seems to have erupted spontaneously after a chance encounter on the street. Defendant shot Phillips in the head and neck three times at a range of three to five feet in a public place, an urban bus stop. And most critically of all, we had not yet decided any of our cases cutting back on Register. We had not yet even decided Sanchez, which ratified Register's continued authority.

9

Id. at 601-02.[4]

                              IV.

        "[A] federal court is prohibited from granting the [application for habeas corpus] unless the state court's adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" Brown v. Greiner, 409 F.3d 523, 533 (2d Cir. 2005) (quoting 28 U.S.C. § 2254(d)). As we have interpreted this standard, "we decide not whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time." Id. "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The operative Supreme Court holding at the time Policano's conviction became final was In re Winship, 397 U.S. 358 (1970), which announced a constitutional rule, as interpreted by Jackson, "that the Due Process Clause of the Fourteenth

_____

        [4] To paraphrase our observation about the district court's use of post-conviction New York State case law, the Court of Appeals used Sanchez as a means of understanding the applicable law as it existed at the time of Policano's trial and appeal. See Policano II, 430 F.3d at 92.

                              10

Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson, 443 U.S. at 315 (quoting Winship, 397 U.S. at 364). Our review is therefore to determine whether the state court adjudication is contrary to, or an unreasonable application of, the Winship rule as interpreted by Jackson on a petition for a writ of habeas corpus. "[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000).

V.

If the issue to be decided today were whether, under the facts as we understood them at the time of our decision in Policano II or as the district court understood them at the time of its decision in Policano I, we now would be required, in light of the New York Court of Appeals decision in Policano III, to reverse the district court's grant of Policano's application for habeas relief, the answer, for us, would not be an easy one. We are still not convinced, despite the evidence relating to "crack" ingestion, the shot to the thigh and other circumstances of the crime, that the record as we understood it at the time of Policano II, 430 F.3d at 91, included what amounts to evidence that Policano might have acted unintentionally, Policano III, 7 N.Y.3d at 601.

11

That question, however, is now moot.  A rereading of the trial record reveals that in addition to the evidence of Policano's crack usage prior to Phillips's death, Policano himself testified that he had been at a methadone clinic the afternoon of the murder, Trial Tr. at 387; that late the same afternoon or during the evening he "used" "three [or] four" bags of heroin, id. at 390; and that he consumed some alcohol that night, too, id. at 406.[5]  In light of this testimony, in addition to the well-accepted principle of New York penal law that voluntary intoxication can negate the mens rea of intent but not recklessness, see N.Y. Penal Law § 15.25 ("[E]vidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime

---

[5]  Curiously, the respondent never called this testimony to our attention, or, for that matter, to that of the district court or the New York Court of Appeals.  To our dismay, we did not discover it except upon further review of the trial transcript after Policano III was decided.  It is for that reason that it is not reflected in our opinion in Policano II, or, we suppose, in the opinion of the district court in Policano I, our colleagues' dissent from denial of en banc review, or the Court of Appeals's decision in Policano III.  We solicited and received supplemental briefing on the implications, if any, of this evidence on our deliberations.

We are permitted to consider the other evidence at trial as to Policano's drug use as part of our de novo review of "the record evidence adduced at the trial." Jackson, 443 U.S. at 324; see also United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) (reversing the district court's judgment of acquittal notwithstanding the verdict "[a]fter searching the record"); United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) ("In considering [a sufficiency of the evidence] challenge, we review all of the evidence presented at trial. . . ."), cert. denied, 529 U.S. 1080 (2000).

charged."); see also Register, 60 N.Y.2d at 275 (affirming trial court's decision to instruct the jury as to effect of voluntary intoxication on an intentional murder count but not depraved indifference murder); N.Y. Penal Law 15.05(3) ("A person who creates [a substantial and unjustifiable] risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto."), we cannot say that no rational juror could have found beyond a reasonable doubt that Policano acted unintentionally. See Jackson, 443 U.S. at 324. A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326. We therefore vacate our opinion in Policano II and reverse the judgment of the district court.

## CONCLUSION

For the foregoing reasons, the order of the district court granting petitioner's 28 U.S.C. § 2254 habeas corpus application and ordering him released from custody is reversed, and the case is remanded to the district court with instructions that it enter an order denying the petitioner's application for habeas corpus. The order of this court denying a stay with respect to that portion of the district court's order releasing

13

the petitioner from custody shall be vacated forthwith, and the stay as to that portion of the order shall be granted forthwith pending the issuance of the mandate in this appeal.