**David POLICANO, Petitioner–Appellee,**

v.

**Victor T. HERBERT, Respondent–Appellant.**

Docket No. 04–5518–pr.

United States Court of Appeals, Second Circuit.

Argued: July 11, 2005.

Decided: June 21, 2006.

Richard Ware Levitt, New York, NY, for Petitioner–Appellee.

Rhea A. Grob, Assistant District Attorney (Charles J. Hynes, District Attorney, Kings County, Leonard Joblove & Ann Bordley, Assistant District Attorneys, of counsel), Brooklyn, NY, for Respondent–Appellant.

## ORDER

A poll on whether to rehear this case *en banc* was conducted among the active judges of the court upon the request of an active judge of the court. Because a majority of the court's active judges voted to deny rehearing *en banc*, rehearing *en banc* is hereby DENIED.

Judges Calabresi, Straub, Pooler, Sack, Sotomayor, Katzmann, B.D. Parker and Hall concur in the denial of rehearing *en banc.* Chief Judge Walker and Judges Jacobs, Cabranes, Raggi and Wesley dissent from the denial of rehearing *en banc.* With this order is filed a *per curiam* opinion concurring in the denial of rehearing *en banc.* Judge Raggi dissents in an opinion in which Chief Judge Walker and Judges Jacobs, Cabranes and Wesley join. Judge Wesley dissents in a separate opinion in which Judge Raggi joins.

CALABRESI, STRAUB, POOLER, SACK, SOTOMAYOR, KATZMANN, B.D. PARKER and HALL, Circuit Judges, concurring in the denial of rehearing en banc.

### PER CURIAM.

A clear majority of the United States Court of Appeals for the Second Circuit seeks the guidance of the New York Court of Appeals to answer questions which are fundamentally issues of state law. The majority does not think it is appropriate to have an *en banc* proceeding on issues of state law where a panel has certified those issues and where resolution of those state law questions could well be outcome determinative of any remaining federal questions. The New York Court of Appeals has been a welcoming partner in the certification process and we have been grateful for its continuing counsel. *See* Judith S. Kaye and Kenneth I. Weissman, *Interactive Judicial Federalism: Certified Questions in New York,* 69 Fordham L.Rev. 373 (2000). As has always been the case, we recognize that the New York Court of Appeals should feel free to make such modifications as to the form of the questions as it deems appropriate. As the certifying panel noted: "[i]n formulating the questions as we have, we do not intend to limit the scope of the New York Court of Appeals' analysis or its response. The certified questions may be deemed expanded to cover any pertinent further issue that the New York Court of Appeals thinks it appropriate to address."

REENA RAGGI, Circuit Judge, with whom Chief Judge WALKER, Judge JACOBS, Judge CABRANES, and Judge WESLEY, join, dissenting.

On this appeal from the grant of a writ of habeas corpus to a New York State prisoner who raised a sufficiency challenge to his second degree murder conviction, see N.Y. Penal Law § 125.25, a panel of this court finds that "there is no doubt that [Policano] intended to kill his victim," *Policano v. Herbert,* 430 F.3d 82, 91 (2d Cir. 2005); *see also Policano v. Herbert,* No. 02–1462, 2004 WL 1960203, 2004 U.S. Dist. LEXIS 17785 (E.D.N.Y. Sept. 7, 2004). This conclusion is not, as one might expect, the basis for reversing the habeas award but, rather, for affirming it. Because the panel deems the evidence that Policano intended to kill his victim incontrovertible, it concludes that the evidence is necessarily insufficient to permit a reasonable jury to find that he killed with depraved indifference. *See Policano v. Herbert,* 430 F.3d at 88–91; *see also* N.Y. Penal Law § 125.25(1) & (2) (identifying intentional and depraved indifference theories of second degree murder). Put another way, Policano's murder conviction is vacated not because the evidence of his culpability is too weak, but because it is too strong. The net result is that Policano likely "gets away with murder" because New York's statutory prohibition on successive prosecutions, *see* N.Y.Crim. Proc. Law § 40.20, which is stricter than constitutional double jeopardy, precludes his retrial for intentional murder even though the jury in his case (following court instructions) never

returned a verdict on that charge.[1]

Although the *Policano* panel itself characterizes this result as "disturbing," it concludes that its sufficiency ruling is mandated by established New York State law. *Policano v. Herbert*, 430 F.3d at 92–93. This was not, however, the conclusion reached by New York courts when they affirmed Policano's depraved indifference conviction on direct appeal, *see People v. Policano*, 277 A.D.2d 331, 715 N.Y.S.2d 880 (2d Dep't 2000),[2] and denied further review, *see People v. Policano*, 96 N.Y.2d 786, 725 N.Y.S.2d 651, 749 N.E.2d 220 (2001) (Smith, G.B., J.).[3] I respectfully submit that the *Policano* decision, by, in effect, telling New York courts that they failed to understand the limits of their own state law, commands a seriously flawed result warranting full court review. Accordingly, I respectfully dissent from the denial of rehearing *en banc.* To the extent that denial is informed, at least in part, by the *Policano* panel's belated decision to certify certain questions of state criminal law to the New York Court of Appeals, I am of the view that no such inquiry is necessary for this court to conclude that a writ of habeas corpus was improvidently granted in this case. Nevertheless, because the panel has chosen to certify, in this opinion, I also offer some reflections that may be relevant to the Court of Appeals' consideration of the certified questions.[4]

At the outset, I briefly summarize the three reasons for *en banc* review that will be discussed in detail in this opinion:

First, *Policano's* constitutional insufficiency ruling depends on a construction of New York law that did not command a majority of the state's Court of Appeals until 2004, well after petitioner's conviction became final on March 30, 2001.

Second, *Policano* fails to apply deferential review, as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, see 28 U.S.C. § 2254(d), to the Appellate Division's ruling that the trial evidence was sufficient to permit a reasonable jury to find Policano guilty of depraved indifference murder under New York law.

Third, if the purported error in this case is viewed as a charging failure to tell the

---

1. Policano has been released from custody as a result of the habeas award in this case. *See Policano v. Herbert*, 2004 WL 1960203, at *16–17, 2004 U.S. Dist LEXIS 17785, at *48–49.

2. The Appellate Division, Second Department ruled: "Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *People v. Policano*, 277 A.D.2d at 331–32, 715 N.Y.S.2d at 881 (internal citation omitted). Proceeding to exercise its broader "factual review power" under state law, the Appellate Division further concluded that the depraved indifference verdict "was not against the weight of the evidence." *Id.* at 332, 715 N.Y.S.2d at 881; *see* N.Y.Crim. Proc. Law § 470.15(5).

3. Because Judge George Bundy Smith has long supported a narrow definition of depraved indifference murder—both before and after that view commanded a majority of the New York Court of Appeals—there can be no question as to his sensitivity to Policano's sufficiency challenge. *See, e.g., People v. Suarez*, 6 N.Y.3d 202, 217, 811 N.Y.S.2d 267, 278, 844 N.E.2d 721 (2005) (G.B. Smith, Rosenblatt, and R.S. Smith, JJ., concurring); *People v. Sanchez*, 98 N.Y.2d 373, 388, 748 N.Y.S.2d 312, 321, 777 N.E.2d 204 (2002) (G.B.Smith, J., dissenting).

4. Nothing in this opinion should be read to suggest that the New York Court of Appeals should decline certification. Indeed, I write because many of the concerns that prompt me to request *en banc* review might also reasonably inform the Court of Appeals' consideration of the certified questions.

jury first (or only) to consider intentional murder, the error might well be deemed harmless in light of the panel's conclusion that there is "no doubt" that petitioner "intended to kill his victim." *Policano v. Herbert*, 430 F.3d at 91.

In urging *en banc* review, I understand that this court rarely convenes as a whole to rectify perceived errors in a single case. It is, however, exceptionally important that it do so here. *See* Fed. R.App. P. 35. The *Policano* decision, if left to stand, may well unleash a rash of habeas challenges by other convicted New York State murderers raising the same ironic sufficiency argument: that, under state law, they are too guilty of murder (because they really intended to kill their victims) to be guilty of murder (on a theory of depraved indifference).[5] For a federal habeas court to embrace this argument in cases in which the state courts themselves identified no such error at the time the convictions became final, and on that ground to release obviously dangerous individuals, propagates public disrespect for both the courts and the law. As Judge Friendly observed, "[t]he proverbial man from Mars would surely think we must consider our system of criminal justice terribly bad if we are willing to tolerate such efforts at undoing judgments of conviction." Henry J. Friendly, *Is Innocence Irrelevant? Col-*

*lateral Attack on Criminal Judgments*, 38 U. Chi. L.Rev. 142, 145 (1970). Such circumstances clearly warrant our careful consideration *en banc*.

## I. Background

Although the facts relevant to the crime of conviction are set forth in the panel opinion, *see Policano v. Herbert*, 430 F.3d at 84–86, a brief review is appropriate.[6]

At approximately 8:45 p.m. on January 27, 1997, petitioner David Policano approached Terry Phillips at a Brooklyn bus stop and shot him dead. A few days earlier, on January 21, 1997, the two men had purportedly engaged in a quarrel, during which Phillips struck Policano in the face with a metal pipe. Although Policano initially declined police intervention, stating that he would "take care of" matters himself, he subsequently filed a formal police complaint against Phillips. *Id.* at 85 (quoting Trial Tr. 240, 250). Sometime in the forty-five minutes before the January 27, 1997 shooting, Policano ingested crack cocaine. At the time of the shooting, a friend of the victim saw Policano approach the bus stop where Phillips was standing and point a gun in Phillips's direction. The witness heard, but did not see, shots fired. A forensics witness testified that Phillips sustained four gunshot wounds,

5. *See People v. Sanchez*, 98 N.Y.2d at 387, 748 N.Y.S.2d at 321, 777 N.E.2d 204 (suggesting that, in a large number of the ninety-seven depraved indifference murder convictions obtained in New York State between 1998 and 2001, compelling evidence demonstrated that the defendants intended to kill their victims). Indeed, just in the past year, a number of defendants convicted of depraved indifference murder have petitioned for federal habeas relief on the ground that the trial evidence in fact proved that they were guilty of intentional murder. *See, e.g., King v. Artus*, No. 04–9960, 2006 WL 1310379, 2006 U.S. Dist. LEXIS 31459 (S.D.N.Y. May 10, 2006); *Guzman v. Greene*, 425 F.Supp.2d 298 (E.D.N.Y.

2006); *Thomas v. Lord*, 396 F.Supp.2d 327 (E.D.N.Y.2005); *Callender v. McGuiness*, No. 05–942, 2005 WL 2461808, 2005 U.S. Dist. LEXIS 22551 (S.D.N.Y. Oct. 6, 2005); *Salcedo v. Phillips*, No. 04–7964, 2005 WL 2211318, 2005 U.S. Dist. LEXIS 19808 (S.D.N.Y. Sept. 13, 2005) (report and recommendation).

6. *But see infra* at 91–92, 96 (emphasizing that, for purposes of sufficiency review, this evidence must be viewed in the light most favorable to the verdict of depraved indifference, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

two to his head, one to his neck, and one to his right thigh, all fired at close range. The witness stated that the first three shots appeared to have been fired while Phillips was standing; the shot to the thigh appeared to have been fired after Phillips was on the ground.

Over Policano's objection, the jury was charged on both the specific intent and depraved indifference theories of second degree murder. *See* N.Y. Penal Law § 125.25(1) & (2). Told not to consider specific intent if it found depraved indifference proved, the jury found Policano guilty on the latter theory and returned no verdict on specific intent. *See Policano v. Herbert,* 430 F.3d at 85–86.

## II. *The Reasons Warranting En Banc Review in this Case*

### A. *At the Time Policano's Conviction Became Final, New York Law Regarding Depraved Indifference Murder Did Not Support a Habeas Award*

#### 1. *Determining the State Law Relevant to a Constitutional Sufficiency Challenge*

The rule of constitutional sufficiency derived from the Due Process Clause states that no conviction may be obtained "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime ... charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When this rule is invoked on a habeas challenge to a state court conviction, "[a] federal court must look to state law to determine the elements" constituting the crime at issue. *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 811 (2d Cir.2000) (internal quotation marks omitted) (alteration in original).

Necessarily, the relevant state law is that in effect at the time the petitioner's conviction becomes final because the Constitution does not compel retroactive application of state law. *See Great N. Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932); *Fiore v. White,* 149 F.3d 221, 224–25 (3d Cir.1998) (Alito, J.) (rejecting habeas claim based on state law precedent not in force "at the time of [petitioner's] conviction"), *overruled on other grounds,* 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001). This conclusion is reinforced by the fact that this court does not give retroactive collateral effect to new federal law regarding the elements of federal crimes. See *Coleman v. United States,* 329 F.3d 77, 89 n. 10 (2d Cir.2003) (declining to apply *Apprendi* rule retroactively to § 2255 motion).

Thus, Policano's sufficiency challenge is properly reviewed on habeas only by reference to depraved indifference murder as defined by clearly established New York law in 2001 when his conviction became final.

#### 2. *Policano's Reliance on the 2004 Decisions in Payne and Gonzalez*

In concluding that, although the trial evidence convincingly demonstrated petitioner's intent to kill his victim, it was constitutionally insufficient to support a depraved indifference verdict, *Policano* relies on two 2004 decisions of the New York Court of Appeals which held that a shooting "can *never* result in depraved indifference murder when ... there is a manifest intent to kill." *People v. Payne,* 3 N.Y.3d 266, 271, 786 N.Y.S.2d 116, 118, 819 N.E.2d 634 (2004) (emphasis added); *see People v. Gonzalez,* 1 N.Y.3d 464, 467, 775 N.Y.S.2d 224, 226, 807 N.E.2d 273 (2004) (affirming reversal of depraved indifference conviction because "defendant was guilty of an intentional shooting or no other") (internal quotation marks omitted). While acknowledging that these rulings

post-date petitioner's conviction, the *Policano* panel nevertheless concludes that they control the definition of depraved indifference murder for purposes of this case because the facts here are not materially different from *Gonzalez,* and because "*Gonzalez* and *Payne* represent not the creation of a new legal principle, but the application of long-settled New York law to new facts." *Policano v. Herbert,* 430 F.3d at 92. The referenced "long-settled" law apparently is the Court of Appeals decision in *People v. Gallagher,* 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987).[7]

As a preliminary matter, I cannot agree with the *Policano* panel's conclusion that the facts in that case are not materially different from those in *Gonzalez.*[8] *See Policano v. Herbert,* 430 F.3d at 89. More fundamentally, I do not agree that *Payne* and *Gonzalez* are mere reiterations of long-settled state law. Nor do I think that *Gallagher,* by itself, can support a holding of constitutional insufficiency in this case. Further, I cannot conclude that the New York State courts' failure to construe their own state law in the same manner as the *Policano* panel constitutes an unreasonable application of the *Winship* rule. See *infra* at 91 – 92 (discussing standard of habeas review under 28 U.S.C. § 2254(d)); *see also Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions."). To explain this conclusion, it is necessary to review the evolution of New York law distinguishing intentional and depraved indifference murder. *See generally* Abraham Abramovsky & Jonathan I. Edelstein, *Depraved Indifference Murder Prosecutions in New York: Time for Substantive and Procedural Clarification,* 55 Syracuse L.Rev. 455, 459–85 (2005).

### 3. The Evolution of New York Law Regarding Depraved Indifference Murder

Under New York law, a person is guilty of second degree murder in violation of

---

**7.** By framing its first certified question to the Court of Appeals by reference to "the law of the State of New York as established by, *inter alia, People v. Gallagher,* 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987)," the *Policano* panel identifies *Gallagher* as the critical expression of established New York law at the time petitioner's conviction became final. *Policano v. Herbert,* 453 F.3d 75, at 76 (2d Cir.2006). But by telling the Court of Appeals that it asks the first question "without regard to any rule of law—whether or not New York applies it retroactively—adopted thereafter by the New York Court of Appeals in, *e.g., People v. Payne,* 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634 (2004), or *People v. Gonzalez,* 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273 (2004)," the *Policano* panel leaves ambiguous whether it remains of the view, emphatically expressed in its original opinion, that *Payne* and *Gonzalez* are relevant to the resolution of this case; whether it now abandons that position and relies only on

*Gallagher;* or whether it seeks any clarification on that point from the Court of Appeals.

**8.** In contrast to *Gonzalez,* in *Policano* no eyewitness actually saw (rather than heard) the shots fired, the defendant had ingested crack cocaine approximately forty-five minutes before the shooting, and the final shot to the prone victim was to his thigh. These are all circumstances that, when viewed in the light most favorable to the government, might permit a jury to "harbor a reasonable doubt that the homicide ... was intentional." *People v. Sanchez,* 98 N.Y.2d at 377, 748 N.Y.S.2d at 313, 777 N.E.2d 204; see *People v. Gonzalez,* 1 N.Y.3d at 465–66, 775 N.Y.S.2d at 225–26, 807 N.E.2d 273 (noting eyewitness to shooting and final eight shots to prone victim's head); *People v. Rodriguez,* 76 N.Y.2d 918, 920, 563 N.Y.S.2d 48, 49, 564 N.E.2d 658 (1990) (noting that voluntary intoxication can defeat finding of intent). Certainly, it was not an objectively unreasonable application of *federal* law for the Appellate Division to so rule.

N.Y. Penal Law § 125.25 if he causes the death of another person either (1) intending to cause the death of that person or someone else, N.Y. Penal Law § 125.25(1); or (2) while recklessly engaging in conduct creating a grave risk of death under circumstances evincing a depraved indifference to human life, id. § 125.25(2). In 2001, when Policano's conviction became final, it was not established New York law that compelling evidence of intent to kill precluded a guilty verdict on a theory of depraved indifference. In 2001, the only relevant established principle was that a jury had to be instructed to consider these theories of second degree murder in the alternative and could not be permitted to find a defendant guilty on both theories for the same killing.

This rule was established in 1987 in *People v. Gallagher*, in which the New York Court of Appeals held that "[w]here a defendant is charged with a single homicide, in an indictment containing one count of intentional murder and one count of depraved mind murder, both counts may be submitted to the jury, but only in the alternative." 69 N.Y.2d at 528, 516 N.Y.S.2d at 175, 508 N.E.2d 909. The Court explained:

> One who acts intentionally in shooting a person to death—that is, with the conscious objective of bringing about that result (Penal Law § 15.05[1])—cannot at the same time act recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur (Penal Law § 15.05[3]). The act is either intended or not intended; it cannot simultaneously be both. Thus, where the shooting (the act) and the death (the result) are the same, a defendant cannot be convicted twice for the murder, once for acting "intentionally" and once for acting "recklessly."

It follows, therefore, that the two second degree murder counts in the present indictment—intentional murder and depraved mind murder—are inconsistent counts as defined in CPL 300.30(5), because guilt of one necessarily negates guilt of the other. A finding that defendant committed intentional murder by killing his victim with the conscious objective of causing his death precludes the inconsistent finding that defendant at the same time committed depraved mind murder by recklessly and thus unintentionally killing that same victim under circumstances evincing a depraved indifference to human life. By no rational theory could the jury have found the defendant guilty of both crimes.

69 N.Y.2d at 529–30, 516 N.Y.S.2d at 175, 508 N.E.2d 909 (internal citation omitted). Because the jury that convicted Policano was properly instructed to consider the depraved indifference and intentional theories of second degree murder in the alternative, and returned a guilty verdict only on one theory, there clearly was no *Gallagher* error in this case.

More to the point, as the quoted passages make clear, *Gallagher's* concern was not with the sufficiency of the evidence constitutionally required to prove the alternative theories of second degree murder. Rather, *Gallagher* ruled that, even if trial evidence could be sufficient to support a second degree murder verdict on either a specific intent or depraved indifference theory, under N.Y.Crim. Proc. Law § 300.30(5), a jury was allowed to convict only on one theory of guilt. *Id. Gallagher* held that the failure to submit the theories in the alternative was error because it "permit[s] the jury to sidestep its responsibility of deciding which (if either) mental state defendant possessed at the time of the shooting." *Id.* at 530, 516 N.Y.S.2d at 176, 508 N.E.2d 909. *Gallagher* identified a *charging* error, not a sufficiency concern.

Significantly, the reason given by the Court of Appeals for not vacating one of the two guilty verdicts was that "[i]t is not for the [court] in the first instance to determine whether defendant acted intentionally or recklessly at the time of the crime. *That is the jury's function.*" *Id.* (emphasis added). In short, *Gallagher* was concerned with ensuring that a *jury* did, in fact, choose between alternative theories of second degree murder. Nothing in the opinion predicted, much less clearly established, that a *judicial* finding of compelling evidence of intent precludes a jury finding depraved indifference on the same evidence. Indeed, such a conclusion would have been at odds with two earlier Court of Appeals decisions.

In *People v. Green,* the Court of Appeals had ruled "that reckless manslaughter is a lesser included offense of intentional murder." 56 N.Y.2d 427, 433, 452 N.Y.S.2d 389, 393, 437 N.E.2d 1146 (1982). *Green* further explained that where "the only distinction between" the two crimes is the requisite "mental state of the defendant," under the New York Penal Code, it is "impossible to commit" the crime requiring the greater mental state without "concomitantly committing" the crime requiring the lesser mental state. *Id.* at 432, 452 N.Y.S.2d at 392, 437 N.E.2d 1146.[9] The following year, in *People v. Register,* 60 N.Y.2d 270, 276, 469 N.Y.S.2d 599, 601–02, 457 N.E.2d 704 (1983), the court held that the *mens rea* element for depraved indifference murder is the same "recklessness" required for the lesser crime of reckless manslaughter. Together with *Green, Register* established that evidence proving the *mens rea* necessary for intentional homicide is sufficient to prove the *mens rea* necessary for depraved indifference murder. This conclusion is reinforced by *Register's* further holding that the "depravity" element of depraved indifference murder does not turn on the defendant's state of mind but on the objective circumstances in which the reckless act takes place. *See id.*[10]

*Gallagher* did not purport to overrule or limit *Green* or *Register.* Indeed, *Gallagher* cited approvingly to *Green,* at least for the purpose of explaining why even lesser included offenses must be charged in the alternative. *See People v. Gallagher,* 69 N.Y.2d at 530–31, 516 N.Y.S.2d at 176, 508 N.E.2d 909; *see also id.* at 532, 516 N.Y.S.2d at 177, 508 N.E.2d 909 (Bellacosa, J., concurring) (discussing *Green* and concluding that "the lesser culpable mental state, recklessness, is subsumed under the highest mental state known to the criminal law—intent") (internal citation omitted).[11]

---

**9.** The Model Penal Code similarly provides that, "[w]hen recklessness suffices to establish an element, such element also is established if a person acts purposely or knowingly." Model Penal Code § 2.02(5). This proposition reinforces the conclusion that, to the extent *Payne* and *Gonzalez* subsequently abrogated this general rule as it applied to theories of second degree murder, those cases represent a significant departure from *Green.*

**10.** In 2002, Judge Rosenblatt, dissenting in *People v. Sanchez,* criticized *Register* for both these holdings. See 98 N.Y.2d at 406–14, 406, 413, 748 N.Y.S.2d at 335–41, 335, 340, 777 N.E.2d 204 (Rosenblatt, J., dissenting)

(faulting *Register* for holding that "depraved indifference murder has a mens rea of ordinary recklessness" and for "fail[ing] to recognize the defendant's *depraved indifference* to the value of human life as the central mens rea element") (emphasis in original). It was not until 2004, however, in *People v. Payne,* 3 N.Y.3d at 270–71, 786 N.Y.S.2d at 118, 819 N.E.2d 634, that he expressed these views for a majority of the New York Court of Appeals.

**11.** This is not to suggest that *Gallagher* construed the *mens rea* requirement of depraved indifference murder as a lesser included mental state to that required for intentional murder. Such a construction would have been at

Only *after* Policano's conviction became final did the New York Court of Appeals begin to demand anything more than jury consideration of intentional and depraved indifference murder theories in the alternative. In *People v. Sanchez*, 98 N.Y.2d 373, 378, 748 N.Y.S.2d 312, .314, 777 N.E.2d 204 (2002), decided the year after Policano's conviction became final, the court indicated that, if the only rational view of the evidence is that a defendant acted, if at all, with specific intent to kill, it would be *procedural* error to submit both intentional and depraved indifference murder theories to the jury. See N.Y.Crim. Proc. Law § 300.50.[12] Various policy considerations may inform New York's insistence on strict adherence to its procedural rules, but that hardly translates into a constitutional sufficiency concern.[13] Cf. *United States v. Florez*, 447 F.3d 145, 149–50 (2d Cir.2006) (holding that proof of

flight required to toll statute of limitations does not establish flight as element of crime under *Winship*). The Due Process Clause "does not," after all, "require scrutiny of the reasoning process actually used by the factfinder—if known." *Jackson v. Virginia*, 443 U.S. at 319 n. 13, 99 S.Ct. 2781. Evidentiary sufficiency is concerned with ensuring that "the government's burden of proof has [not] been impermissibly reallocated or reduced." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir.2002).

Significantly, in referencing New York's procedural rules, *Sanchez* too did not disturb the rulings in *Green* or *Register*, or in any way indicate that compelling evidence of intent to kill would raise a constitutional sufficiency concern about a depraved indifference verdict. *See People v. Sanchez*, 98 N.Y.2d at 415, 748 N.Y.S.2d at 342, 777 N.E.2d 204 (Rosenblatt, J., dissenting)

odds with its description of the two murder theories as "inconsistent" with one another. *People v. Gallagher*, 69 N.Y.2d at 529–30, 516 N.Y.S.2d at 175–76, 508 N.E.2d 909. Inconsistency, however, only precludes a jury from finding a defendant to have possessed both mental states at the same time. It does not mean that evidence sufficient to support a jury finding of the *mens rea* requirement of specific intent is necessarily legally insufficient to support an alternative finding of the *mens rea* element of depraved indifference. *Gallagher* specifically signaled to the contrary when it held that "both counts may be submitted to the jury." *Id.* at 528, 516 N.Y.S.2d at 175, 508 N.E.2d 909. By ruling that such a submission must be "in the alternative," *Gallagher* identified a charging rule, not a sufficiency standard. *Id.*

12. Section 300.50(1) affords trial courts discretion to submit lesser included offenses to a jury unless "there is no reasonable view of the evidence which would support" a finding that a "defendant committed such lesser offense but did not commit the greater." N.Y.Crim. Proc. Law § 300.50(1).

To the extent *Sanchez's* citation to § 300.50 indicates that the court viewed the

mental state necessary for depraved indifference as a lesser included *mens rea* of intent to kill, this suggests that its sole concern was with New York's procedural rules, not with evidentiary sufficiency. Further, *Sanchez's* citation to § 300.50 presents no conflict with *Gallagher* because it has long been established by N.Y.Crim. Proc. Law § 300.30(5) that lesser included offenses must be considered in the alternative.

13. For example, in his *Sanchez* dissent, Judge Rosenblatt noted that, where the evidence clearly establishes a defendant's intent to kill, depraved indifference should not be charged to the jury because it would "mislead jurors into believing that depraved indifference murder is a milder charge readily available either when intentional murder has not been proved or as a means of extending a measure of leniency" and "will go home believing (wrongly) that they convicted the defendant of a lesser grade of homicide." 98 N.Y.2d at 406, 748 N.Y.S.2d at 335, 777 N.E.2d 204 (Rosenblatt, J., dissenting). No such risk was present in Policano's case because the trial court specifically charged the jury that the depraved indifference theory was equal in blameworthiness under the law to intentional murder. See Trial Tr. 567–68.

(unsuccessfully urging reversal of *Register*). In fact, *Sanchez* specifically rejected that conclusion:

> That [defendant's] conduct involved such a high risk of death that it could also lead to the conclusion that it was intentional supports rather than detracts from characterizing it as evincing depraved indifference to human life.... *[P]urposeful homicide itself is the ultimate manifestation of indifference to the value of human life.*

*Id.* at 384, 748 N.Y.S.2d at 319, 777 N.E.2d 204 (emphasis added).

It is against this backdrop that the 2004 rulings in *Payne* and *Gonzalez* must be considered. To the extent these cases held that a depraved indifference theory should not be charged or that a jury verdict of depraved indifference murder should not stand if a trial or reviewing court concludes that the evidence would only support a verdict of intentional murder, they represent a decided sea change in New York law as previously established by *Green, Register, Gallagher*, and *Sanchez*. *See People v. Gonzalez*, 1 N.Y.3d at 467–68, 775 N.Y.S.2d at 227, 807 N.E.2d 273 (distinguishing *Sanchez* on its facts and upholding Appellate Division's reversal of depraved indifference conviction because "where ... defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct"); *see also People v. Payne*, 3 N.Y.3d at 270, 786 N.Y.S.2d at 117, 819 N.E.2d 634 (noting that "recent holdings" make it clear "that depraved indifference murder may not be properly charged" in most point-blank shootings). Indeed, two of the court's leading proponents of this change, Judges G.B. Smith and Rosenblatt, recently acknowledged as much in their concurring opinion in *People v. Suarez*. *See* 6 N.Y.3d 202, 217, 811 N.Y.S.2d 267, 278–79, 844 N.E.2d 721 (2005) (G.B. Smith, Rosenblatt, and R.S. Smith, JJ., concurring) (recognizing that *Payne* and *Gonzalez* substantially narrowed definition of depraved indifference adopted in *Register* and *Sanchez*); *see also* Abramovsky & Edelstein, *Depraved Indifference Murder Prosecutions in New York, supra,* at 481–83 (describing *Gonzalez* as "distinct break" with *Sanchez,* and *Payne* as "Judge Rosenblatt's first opportunity" to define "a category of homicide—one-on-one killings with a weapon—that can 'never result in depraved indifference murder where ... there is a manifest intent to kill' " (quoting *People v. Payne*, 3 N.Y.3d at 271, 786 N.Y.S.2d at 118, 819 N.E.2d 634)).

To appreciate the scope of the change, it is worth noting that New York courts, like federal courts, have long assumed that questions of intent are reserved for jury resolution based on an assessment of the totality of the circumstances. Indeed, there is a general reluctance by courts to substitute their judgment for that of juries with respect to the intent elements of crimes. Making this point in *Morissette v. United States*, Justice Jackson borrowed from New York law:

> Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury....
>
> "However clear the proof may be, or however incontrovertible may seem to the judge to be the inference of a criminal intention, the question of intent can never be ruled as a question of law, but must always be submitted to the jury."
> ...
>
> It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. It often is tempting to cast in terms of a "presump-

tion" a conclusion which a court thinks probable from given facts. . . .

But juries are not bound by what seems inescapable logic to judges.

342 U.S. 246, 274, 276, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (quoting *People v. Flack,* 125 N.Y. 324, 334, 26 N.E. 267 (1891)); *see People v. Gallagher,* 69 N.Y.2d at 530, 516 N.Y.S.2d at 176, 508 N.E.2d 909 (emphasizing that "[i]t is not for the [court] in the first instance to determine whether defendant acted intentionally or recklessly at the time of the crime. That is the jury's function.").

I do not suggest that *Payne* or *Gonzalez* create an unconstitutional presumption that binds a jury to find that a defendant specifically intended to kill his victim. But they do appear to identify a presumption of intentional murder that, in most one-on-one killings, narrows a jury's ability to consider the alternative depraved indifference theory of second degree murder. Whether this rule, in fact, alters the "elements" of depraved indifference murder so as to implicate constitutional sufficiency admits no easy answer.[14] The issue, however, does not bear upon habeas analysis in this case because such a rule was not clearly established by *Gallagher* or any

other case decided before *Policano's* conviction became final.

Indeed, precisely because the *Payne/Gonzalez* rule departed from former precedent, the New York Court of Appeals recently felt compelled to clarify its parameters and to emphasize that the rule was not qualified by earlier cases, particularly *Register* and *Sanchez.* *See People v. Suarez,* 6 N.Y.3d at 208, 213 n. 7, 214–15, 811 N.Y.S.2d at 272, 276 n. 7, 277, 844 N.E.2d 721; *see also id.* at 217, 811 N.Y.S.2d at 278–79, 844 N.E.2d 721 (G.B. Smith, Rosenblatt, and R.S. Smith, JJ., concurring) (urging formal reversal of *Register* and *Sanchez* ).

In so doing, the Court of Appeals appears to have identified a new bright-line prudential rule, holding that, except in "rare circumstances" patently indicative of depravity (*e.g.,* abandoning a helpless victim or torture), "a jury is foreclosed, as a matter of law, from considering a depraved indifference murder charge whenever death is the result of a one-on-one confrontation." *Id.* at 212–13, 811 N.Y.S.2d at 275–76, 844 N.E.2d 721. The application of this rule does not, however, depend on any *judicial* finding regarding the defendant's intent. Indeed, *Suarez* reiterates

**14.** *Policano* construes New York law to hold that "evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim." *Policano v. Herbert,* 430 F.3d at 91; *see also People v. Sanchez,* 98 N.Y.2d at 377, 748 N.Y.S.2d at 313, 777 N.E.2d 204 (holding that jury may convict on depraved indifference theory if it can "harbor a reasonable doubt that the homicide of [the victim] was intentional"). It is by no means clear that such a condition precedent to a depraved indifference verdict qualifies as an "element" of the offense. Certainly, it does not appear to demand that a jury actually find "lack of intent to kill" proved beyond a reasonable doubt to convict a defendant of depraved indifference murder. Such a proof requisite,

however, is the critical indicator of an "element" as recognized in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. *See Patterson v. New York,* 432 U.S. 197, 206–07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *see also Allen v. Redman,* 858 F.2d 1194, 1196–1200 (6th Cir.1988) (applying *Winship* and *Patterson* in concluding that lack of insanity is not an element of homicide crime).

Thus, if the New York Court of Appeals accepts certification, it might be helpful for it, in responding to the court's inquiries, to indicate how, if at all, its evolving jurisprudence distinguishing intentional and depraved indifference murder affects the "elements" of these two theories of murder for purposes of satisfying *Winship.* See infra at 91 – 94.

the established principle that "[i]t is up to the *jury* to decide in a particular case whether the defendant acted intentionally, or recklessly, or negligently (or not at all)." *Id.* at 212 n. 6, 811 N.Y.S.2d at 274 n. 6, 844 N.E.2d 721 (emphasis added). The fact that the Court of Appeals engaged in this clarification might, by itself, prompt us to review *en banc Policano's* conclusion that *Payne* and *Gonzalez* represent nothing more than the application of *Gallagher* to new facts and, more important, its conclusion that a judicial determination of intent to kill necessarily renders a depraved indifference conviction constitutionally insufficient. Further supporting such review is the strong signal sent by three concurring judges in *Suarez* that the *Payne/Gonzalez* rule should not be given collateral effect:

> We expect, or at least hope, that the rule embodied in this and our other recent decisions [i.e., *Payne* and *Gonzalez* ] will be applied prospectively, and that any impact on already completed prosecutions can be avoided. Defendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final.

*People v. Suarez,* 6 N.Y.3d at 217–18, 811 N.Y.S.2d at 279, 844 N.E.2d 721 (G.B. Smith, Rosenblatt, and R.S. Smith, JJ., concurring); *see also Shannon v. Newland,* 410 F.3d 1083, 1089 (9th Cir.2005) ("[N]othing in AEDPA suggests that it was meant to take away state courts' ability to handle as they see fit the always-thorny problem of the retroactivity of changes in substantive law."). Indeed,

when the cited excerpt from the concurring opinion is read together with Judge Graffeo's dissent, *see* 6 N.Y.3d at 219, 811 N.Y.S.2d at 280, 844 N.E.2d 721 (Graffeo, J., dissenting), it appears that a majority of the Court of Appeals does not think the *Payne/Gonzalez* rule (refined in *Suarez* ) states long-established New York law warranting collateral retroactive application.

Further, there can be no question that the cited language from the concurring opinion was directed to federal courts, because the excerpt concludes with a footnote citing various habeas cases, including *Policano.* The footnote states:

> Adherence to the *Register/Sanchez* analysis may have adverse consequences for the stability of previous convictions. Some federal court decisions indicate that the statute as interpreted according to *Register* and *Sanchez* raises constitutional problems that should result in the release of some defendants on federal collateral review. Today's decision should alleviate those concerns.

*People v. Suarez,* 6 N.Y.3d at 218 n. 1, 811 N.Y.S.2d at 279 n. 1, 844 N.E.2d 721 (G.B. Smith, Rosenblatt, and R.S. Smith, JJ., concurring) (internal citations omitted). Together with the caution against retroactive application, this language suggests that New York does not view the question—how and when depraved indifference should be charged to a jury—as one implicating the constitutional sufficiency concerns identified in *Winship.*[15]

In sum, *en banc* review is warranted in this case because, at the time Policano's conviction became final, it was not a clearly established principle of New York law

---

**15.** Of course, the Court of Appeals may choose to address this point further if it accepts certification. *See infra* at 91 – 94. Nevertheless, because I do not think any New York rule that was clearly established when

Policano's conviction became final raises a *Winship* concern, I would reverse the habeas award in this case without further burdening our state court colleagues.

that compelling evidence of intent to kill precluded a conviction for depraved indifference. Then-established state law required only that a jury be instructed to consider the depraved indifference and intentional theories of second degree murder in the alternative and return a guilty verdict only on one theory. *See People v. Gallagher,* 69 N.Y.2d at 529–30, 516 N.Y.S.2d at 175, 508 N.E.2d 909; *People v. Register,* 60 N.Y.2d at 276, 469 N.Y.S.2d at 601–02, 457 N.E.2d 704; *People v. Green,* 56 N.Y.2d at 432–33, 452 N.Y.S.2d at 392–93, 437 N.E.2d 1146. In light of this controlling law, and for reasons discussed in more detail in the next section of this dissent, a federal habeas court cannot conclude that Policano's depraved indifference conviction violates the sufficiency rule established by *Winship,* much less that the Appellate Division unreasonably applied the *Winship* rule in rejecting Policano's sufficiency challenge on direct appeal.

### B. *AEDPA Deference Precludes Habeas Relief in this Case*

#### 1. *Policano Failed To Apply AEDPA's Deferential Standard of Review*

*Policano* states that " '[t]he standard of review of a sufficiency claim by a federal habeas court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *Policano v. Herbert,* 430 F.3d at 87 (quoting *Wheel v. Robinson,* 34 F.3d 60, 66 (2d

Cir.1994) (quoting *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781)). I must disagree. While this is the correct standard for *de novo* review of a sufficiency challenge, habeas review after AEDPA is more narrowly circumscribed.[16] Relief may be granted only if a federal court concludes that the state court's sufficiency ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[17] Under this standard, a federal court may not grant habeas relief simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Some increment of incorrectness beyond error is required" to demonstrate an objectively unreasonable application of federal law. *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (noting that increment need not be great). Thus, *en banc* review is necessary in this case to correct the misimpression *Policano* may create that AEDPA deference does not apply to sufficiency challenges.

#### 2. *Sufficiency Challenges Merit a High Degree of AEDPA Deference*

The need to clarify AEDPA's application to sufficiency challenges is reinforced by the Supreme Court's recent decision in *Yarborough v. Alvarado,* 541 U.S. 652, 124

---

**16.** *Wheel* and *Jackson* were, of course, pre-AEDPA habeas cases. *Einaugler v. Supreme Court,* 109 F.3d 836, 839–40 (2d Cir.1997), also cited in *Policano* to support the quoted standard of review, *see Policano v. Herbert,* 430 F.3d at 86, involved a habeas petition filed before AEDPA's April 24, 1996 effective date. *See Einaugler v. Supreme Court,* 918 F.Supp. 619 (E.D.N.Y.1996); *see also Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059,

138 L.Ed.2d 481 (1997) (holding that AEDPA does not apply retroactively).

**17.** Habeas relief may also be afforded if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), a point not at issue in this case.

S.Ct. 2140, 158 L.Ed.2d 938 (2004). In that AEDPA case, the Court instructed that "the range of reasonable judgment" that a state court can exercise in applying clearly established federal law "can depend in part on the nature of the relevant rule." *Id.* at 664, 124 S.Ct. 2140. As the Court explained, "[i]f a legal rule is specific," such that "[a]pplications may be plainly correct or incorrect," then the range of federal deference to state courts "may be narrow." *Id.* But "[t]he more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Id.*

Constitutional sufficiency might well be viewed as a paradigmatic "general rule." To comport with due process, no conviction may be obtained "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime ... charged." *In re Winship,* 397 U.S. at 364, 90 S.Ct. 1068. "Reasonable doubt," however, is not a mathematically precise concept. *See, e.g., Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (holding that Constitution does not "require that any particular form of words be used in advising the jury of the government's burden of proof"). Thus, sufficiency review of a jury verdict is both general and deferential. A reviewing court must undertake a holistic assessment of the entire record in the light most favorable to the government, to decide not whether "it believes that the evidence ... established guilt beyond a reasonable doubt," but whether "*any* rational trier of fact" could have reached this conclusion. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781 (emphases in original). Further, when a federal habeas court conducts AEDPA review of a state court's sufficiency ruling, it does not apply the *Winship* rule by itself; it must first look to state law to determine the facts necessary to constitute the charged crime, in short, the crime's ele-

ments. *See Fama v. Comm'r of Corr. Servs.,* 235 F.3d at 811 (internal quotation marks omitted). It is well established that a federal habeas court may not second-guess a state court's construction of its own law. *See Estelle v. McGuire,* 502 U.S. at 67–68, 112 S.Ct. 475 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (holding that "state courts are the ultimate expositors of state law"). These factors combine to suggest that AEDPA deference may well be at its highest when a habeas petition challenges a state court's determination that the record evidence was sufficient to satisfy the state's own definition of a state law crime.

In this light, there is particular reason for the court *en banc* to clarify that habeas sufficiency review is highly deferential, not *de novo,* as implied in *Policano.*

3. *The Appellate Division's Sufficiency Ruling Was Not an Unreasonable Application of Winship in Light of Then–Established New York Law*

Policano's sufficiency challenge, in essence, reduces to a claim that the New York trial court that presided over his case and the Appellate Division that reviewed his conviction failed properly to construe state law identifying the elements of depraved indifference murder. To the extent this argument relies on principles articulated in *People v. Payne,* 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634, and *People v. Gonzalez,* 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273, for reasons discussed *supra* at pages 87 – 91, these decisions cannot control this habeas challenge because they do not reflect clearly established New York law at the time petitioner's conviction became final.

The argument is flawed in another respect. Although Policano objected to the submission of a depraved indifference theory to the jury, he appears not to have challenged the substance of the court's instruction, either at trial or on appeal. Thus, on AEDPA review of the Appellate Division's sufficiency ruling, a habeas court properly assumes that the jury charge correctly identified the elements of depraved indifference murder under then-established state law. *See generally Strickler v. Greene*, 527 U.S. 263, 292, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (finding proof "sufficient under the judge's instructions"); *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 629–30, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) ("Although petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law ... the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusion of state law.").

The trial court charged the jury that to convict Policano of second degree murder on a theory of depraved indifference, it had to find beyond a reasonable doubt: (1) that Policano "caused the death" of the murder victim, (2) that he did so "by recklessly engaging in conduct which created a grave risk of death" to the victim, and (3) that he "engaged in such conduct under circumstances evidencing a depraved indifference to human life." Trial Tr. 569.

With respect to the *mens rea* element of recklessness, the trial court instructed: "A person acts *recklessly* with respect to another person's death when that person engages in conduct which creates a substantial and unjustifiable and grave risk that another person's death will occur. And when he or she is aware of and consciously disregards that risk." *Id.* at 567 (emphasis added).

As to the depraved indifference element, the court charged the jury that it "would have to decide whether the circumstances surrounding [a person's] recklessness, ... when objectively viewed, made it so uncaring, so callous, so dangerous and so inhuman as to demonstrate an attitude of total and utter disregard for the life of the person or persons i[t] endangered." *Id.* at 568.

Policano can hardly claim that he was surprised by these instructions. *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (identifying due process violation where state court's construction of its criminal statute "was so unforeseeable as to deprive the defendant of the fair warning" required by due process). They tracked, almost word for word, then-applicable New York pattern jury instructions for depraved indifference murder. See CJI2d [NY] Penal Law § 125.25(2) at 125–1039 to 125–1043 (rev'd ed.1996).[18]

18. The most recent version of the New York pattern jury instructions identifies the same three elements as were charged in this case, although its proposed explication of recklessness and depraved indifference was revised to reflect the decisions in *Suarez, Gonzalez*, and *Sanchez*. See CJI2d [NY] Penal Law § 125.25(2) (rev'd Apr. 9, 2006), available at http://www.nycourts. gov/cji/3–PenalLaw /125/125–25(2).pdf. That revised explication states that "[d]epraved indifference to human life is best understood as an utter disregard for the value of human life," *id.*, but the pattern instruction does not state, as does *Policano*, that "[i]t is thus an *element* of depraved-indifference murder that the defendant was indifferent to whether his or her acts would result in the victim's death," *Policano v. Herbert*, 430 F.3d at 88 (emphasis added). A federal court is not free to determine for itself the elements of a state crime. *See Ponnapula v. Spitzer*, 297 F.3d at 182 ("*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms."). As *Ponnapula* ex-

As for whether the facts proved at Policano's trial satisfied the state's charged definition of depraved indifference murder, that question was answered as a matter of state law by the Appellate Division's affirmance of Policano's conviction. Due process demands no different conclusion.

Under New York law as established in 2001, discussed *supra* at pages 84 – 91, there can be no question that the trial evidence, when viewed in the light most favorable to the government, was constitutionally sufficient to permit a rational jury to find each of the charged elements of depraved indifference proved beyond a reasonable doubt. *People v. Green* recognized that evidence sufficient to prove intent to kill is necessarily sufficient to support a finding of reckless homicide, 56 N.Y.2d at 430, 452 N.Y.S.2d at 391, 437 N.E.2d 1146; *People v. Register* held that depraved indifference refers to the objective circumstances in which the reckless conduct occurs, not the defendant's mental state, 60 N.Y.2d at 276, 469 N.Y.S.2d at 601–02, 457 N.E.2d 704; and *People v. Sanchez* reiterated these conclusions as late as 2002, ruling that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life," 98 N.Y.2d at 384, 748 N.Y.S.2d at 319, 777 N.E.2d 204. By recognizing depraved indifference and intentional killing as mutually exclusive theories of second degree murder, *People v. Gallagher* established no contrary rule affecting the constitutional sufficiency of Policano's conviction. 69 N.Y.2d at 530, 516 N.Y.S.2d at 176, 508 N.E.2d 909. It established only a charging rule with which the trial court complied in this case.

In sum, *en banc* review is necessary to clarify that AEDPA deference fully applies to sufficiency challenges to state convictions and that, on such review, Policano is not entitled to habeas relief.

### C.   *Harmless Error*

Even if there were a cognizable error in this case, *en banc* review would be warranted to consider whether it might fairly be characterized as a harmless charging error. *See Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *California v. Roy*, 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996). In considering this possibility, it is important preliminarily to note an important distinction between *Policano* and cases such as *Payne* and *Gonzalez:* the *Policano* jury did not acquit the defendant of intentional second degree murder when it convicted him on a theory of depraved indifference. *Compare Policano v. Herbert*, 430 F.3d at 86, *with People v. Payne*, 3 N.Y.3d at 269, 786 N.Y.S.2d at 117, 819 N.E.2d 634 (acquitting defendant of intentional murder), and *People v. Gonzalez*, 1 N.Y.3d at 466, 775 N.Y.S.2d at 226, 807 N.E.2d 273 (same). It is this distinction, together with the fact that depraved indifference and intentional murder are alternative theories of the *same* statutory offense, that allows the court to consider the possibility of harmless error.

In *Neder v. United States*, a charging error—the court's failure to instruct the jury as to the materiality element of fraud—resulted in the jury returning a guilty verdict without determining whether the government had carried its burden of proof on that element. The Supreme Court nevertheless ruled that "the omission of an element is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. at 10, 119 S.Ct. 1827. In short,

---

plained, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Id.* In any event, the "element" *Policano* identifies certainly was not recognized by New York's courts in 2001.

even if a trial court completely fails to instruct a jury as to a requisite element of an offense, habeas relief may not be warranted where the trial record demonstrates beyond a reasonable doubt that, if the jury had been appropriately instructed, it still would have returned a guilty verdict. *See id.* at 12–16, 119 S.Ct. 1827. The Supreme Court had earlier reached a similar conclusion in *California v. Roy*, 519 U.S. at 5, 117 S.Ct. 337, in which the trial court's complete omission of the *mens rea* element of felony murder was deemed subject to harmless error analysis. *Cf. Johnson v. United States*, 520 U.S. 461, 469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (noting that trial judge's failure to submit materiality to jury was analogous to failure properly to instruct jury as to element of crime and, therefore, amenable to harmless error analysis).

I recognize, of course, that a number of Supreme Court Justices have questioned the propriety of a reviewing court deciding the findings that a properly instructed jury would have reached, but, at present, these are minority views. See *Neder v. United States*, 527 U.S. at 26–27, 119 S.Ct. 1827 (Stevens, J., concurring in part and concurring in the judgment); id. at 30, 119 S.Ct. 1827 (Scalia, J., with Souter and Ginsburg, JJ., concurring in part and dissenting in part); *California v. Roy*, 519 U.S. at 7–8, 117 S.Ct. 337 (Scalia, J., with Ginsburg, J., concurring). Following the above-cited precedents, our own court has held a charging error harmless on a judicial finding that a properly instructed jury would have found a heightened scienter element proved beyond a reasonable

doubt. *See Peck v. United States*, 106 F.3d 450, 454–57 (2d Cir.1997).

If the failure to charge an element, either entirely or accurately, can be deemed harmless when the evidence overwhelmingly demonstrates that a properly instructed jury would have found it proved, we might well consider *en banc* whether the same conclusion should be drawn with respect to a charging error that properly instructs a jury that second degree murder requires proof of *mens rea*, but that effectively errs (because of the order in which it instructs the jury to consider alternative theories) in failing to ensure that the jury considers the correct standard of *mens rea* (specific intent). In other words, if the jury had been instructed to consider, first or only, the theory of specific intent, and if, as the *Policano* panel concludes, there is "no doubt" that, so instructed the jury would still have convicted the defendant of second degree murder, 430 F.3d at 91, then the charging error in submitting the depraved indifference theory to the jury appears harmless.[19]

### III. *How the Concerns Identified in This Dissent Might Inform Consideration of the Certified Questions*

I would proceed to *en banc* review and reversal of the *Policano* decision without first burdening our state law colleagues with certified questions. Nevertheless, because a majority of the court has concluded otherwise, it may be useful briefly to summarize how the concerns expressed in this dissent could inform the New York Court of Appeals' consideration of the certified questions. In doing so, I am mindful

---

**19.** Because intentional murder requires proof of two elements—(1) that the defendant cause the death of a person, (2) with the intent to cause the death of that person or some third individual, *see* CJI2d [NY] Penal Law § 125.25(1), available at http://www.nyc- ourts.gov/cji/3 –PenalLaw/125/125-25-1 ..pdf—the first of which is also an element of depraved indifference murder, *see id.* § 125.25(2), there can be no question that the jury found this element proved beyond a reasonable doubt.

both that the Court of Appeals can and does pick the questions it wants to answer, *see Country Wide Ins. Co. v. Nat'l R.R. Passenger Corp.,* 6 N.Y.3d 172, 177, 811 N.Y.S.2d 302, 305, 844 N.E.2d 756 (2006), and that the *Policano* panel has expressly invited the court to expand the scope of its responses as it deems appropriate, *see Policano v. Herbert,* 453 F.3d at 76.[20]

The *Policano* panel certifies three questions to the Court of Appeals:

1. Whether on March 30, 2001 (the date on which petitioner Policano's conviction became final), under the law of the State of New York as established by, *inter alia, People v. Gallagher,* 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987), where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim, would a jury be permitted to find that the elements of depraved indifference murder were satisfied beyond a reasonable doubt?

2. At the time Policano's conviction became final, what were the established elements of depraved indifference murder?

3. Does the interpretation of N.Y. Penal Law § 125.25(1) and (2) set forth in *People v. Payne,* 3 N.Y.3d 266, 270, 786 N.Y.S.2d 116, 117, 819 N.E.2d 634 (2004) and *People v. Gonzalez,* 1 N.Y.3d 464, 467, 775 N.Y.S.2d 224, 226, 807 N.E.2d 273 (2004), state the correct interpretation of the law of New York with respect to the elements of depraved indifference murder on the date Policano's conviction became final?

*Id.* at 80.

As discussed in Part II.B of this dissent, the single federal concern on habeas re-

view of *Policano's* conviction is the due process sufficiency requirement clearly established by the Supreme Court in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, and *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. It is worth reiterating that these precedents instruct a reviewing court to view the evidence in the light most favorable to the verdict. *See Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781. This rule acknowledges a jury's right to accept only those facts of which it is convinced beyond a reasonable doubt and to disregard all other evidence. Thus, in considering a constitutional sufficiency challenge, a federal court disregards (as it must assume the jury did) any evidence that does not support the jury verdict.

Applying that rule to the depraved indifference conviction in this case, a federal court would appropriately disregard the permissible inference of specific intent that might have been drawn from the forensic evidence. At the same time, a federal court would have to assume that the jury was persuaded that Policano's ingestion of crack cocaine impaired his ability to form a specific intent to kill and that his firing of the final shot into the prone victim's thigh was inconsistent with such intent.

In light of these *Jackson*-mandated assumptions, I do not think a federal habeas court can conclude, as a matter of federal constitutional law, that this is a case "where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim." By building this conclusion into its first question to the Court of Appeals, *Policano v. Herbert,* 453 F.3d at 76, the *Policano*

---

**20.** Footnotes 7, 14, and 15 of this dissent also comment on the certification questions posed by the *Policano* panel.

panel not only makes an assumption at odds with federal law, it also fails to highlight for the Court of Appeals a point that may be critical to the resolution of this habeas petition: the possibility that New York, in addressing various *state law* concerns relating to depraved indifference murder, applies a special sufficiency test to convictions obtained under this homicide theory—a test that requires state trial and reviewing courts to make their own appraisals of whether the evidence of intentionality so dominates that it may not be disregarded by a jury. If the Court of Appeals accepts certification of *any* questions from this court in this case, it would be important for it to indicate whether New York law differs in any respect from federal law as articulated in *Winship* and *Jackson v. Virginia* in reviewing the sufficiency of depraved indifference murder convictions.

With this overarching concern in mind, the Court of Appeals might reframe the first certified question simply to ask:

Under the law of New York at the time Policano's conviction became final, was the jury permitted to find him guilty of depraved indifference murder on the evidence before it?

The same overall concern with a possible difference in federal and state sufficiency law should, I submit, inform New York's review of the second and third certified questions. When this court inquires about "elements," it references only those facts that due process demands be proved beyond a reasonable doubt. *See In re Winship*, 397 U.S. at 364, 90 S.Ct. 1068. To the extent concerns other than constitutional due process may inform New York's identification or definition of the "elements" of depraved indifference murder, it would be helpful for the Court of Appeals to so indicate in its responses.

Obviously, the focus of any elements inquiry in this case is on the clearly established *mens rea* requirement of depraved indifference murder at the time Policano's conviction became final. The Court of Appeals may wish to indicate whether, at the relevant time, the *mens rea* element of depraved indifference murder referred to two mental states (recklessness and depravity) or only one (recklessness—under circumstances that objectively evinced a depraved indifference to human life). If the latter, the court might also address whether evidence supporting a finding of intentional murder could, in 2001, have been sufficient to demonstrate circumstances evincing a depraved indifference to human life. *See People v. Sanchez*, 98 N.Y.2d at 384, 748 N.Y.S.2d at 319, 777 N.E.2d 204.

Finally, as this opinion indicates, members of this court disagree as to whether the 2004 decisions in *People v. Payne*, 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634, and *People v. Gonzalez*, 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273, reflect only "the application of long-settled New York law to new facts," *Policano v. Herbert*, 430 F.3d at 92, or a new rule that would not control resolution of this habeas challenge to a 2001 conviction. To the extent the recent Court of Appeals decision in *People v. Suarez*, 6 N.Y.3d 202, 811 N.Y.S.2d 267, 844 N.E.2d 721, sheds light on this point, the court may wish to modify the certified questions, particularly the third, to incorporate *Suarez* into its discussion of the issues presented. Insofar as the concurring opinion in *Suarez* specifically urges against retroactive application of that holding (and possibly *Payne* and *Gonzalez*), the full court might wish to speak to this issue, particularly if a reason for not giving these rulings retroactive effect is that they implicate state law concerns unrelated to constitutional sufficiency.

## IV. *Conclusion*

To summarize, I think this court seriously erred when, on review of a petition for a writ of habeas corpus, it held that, because it concluded that Policano undoubtedly intended to kill his victim, his New York conviction for depraved indifference murder had to be invalidated as constitutionally insufficient. No further guidance from the New York Court of Appeals is necessary for us to rectify this error. Correction is important, not only to reinstate Policano's deserved conviction for second degree murder but also to ensure the application of proper AEDPA deference to similar sufficiency challenges by other state prisoners convicted of depraved indifference murder. Accordingly, I respectfully dissent from the court's denial of *en banc* review.

RICHARD C. WESLEY, Circuit Judge, with whom REENA RAGGI, Circuit Judge, joins in dissenting from the denial of rehearing en banc.

Judge Raggi indicates that her dissent should not be seen as encouraging the New York Court of Appeals to decline certification, *see* Dissent at 81 n. 4; I echo that sentiment. I write separately only to reaffirm the dissent's procedural context and its implications for the New York Court of Appeals as it considers this Court's request to accept three certified questions. Judge Raggi's dissent is filed in the context of an *en banc* poll of the panel's *Policano* decision. The dissent concludes that for purposes of evaluating Policano's habeas petition, the original panel erred in its delineation of the law of depraved indifference murder in New York at the time Policano's convictions became final. Because the *Policano* panel's habeas analysis creates serious questions for future habeas petitions raising sufficiency of the evidence claims, the dissent also explains the calculus federal courts must employ in deciding habeas petitions. Although the dissent has not carried the day, the New York Court of Appeals should not view our disagreement as opposition to its acceptance of the "now posed" certified questions.

What should be quite clear is that all thirteen active judges on this Court agree that the issues raised in the first *Policano* decision are close and difficult. Certification is the route this Court has taken, and it is through this process that we will measure the panel's *Policano* decision. The *Policano* panel's use of the certification process itself suggests that, at the very least, New York law was unsettled at the time Policano's conviction became final. Of course, the New York Court of Appeals is free to answer any or all the questions, or to recast the questions in any way it sees fit; the dissent is careful to highlight which issues are of particular importance to at least some members of this Court. But given the complexity and importance of the issues presented by *Policano*, there is no doubt that the New York Court of Appeals' views will be most helpful (as they have in the past in our close and respectful working relationship) to the task at hand.

Finally, it is no secret that I spent over six wonderful years at Eagle Street and participated in *People v. Sanchez*, one of the cases central to the resolution of issues presented in *Policano*. Whatever my views were then, the question of whether *Sanchez* was correctly decided under New York law or whether *Sanchez* should be explicitly overruled in light of later cases is not for me to say. That is so because the goal for each court is to meet its separate and distinct responsibilities. The per curiam opinion rightfully points out that where, as here, the definition of a crime involves a New York statute and the New

York Court of Appeals' view of that statute, the question is fundamentally a state matter. Hopefully, the New York Court of Appeals will answer the question, or questions, it deems appropriate. The matter will then move back to the docket at Foley Square and a panel of this Court will undertake to resolve the habeas concerns raised in *Policano* in light of the answers from the New York Court of Appeals. Thus my concerns with the first decision in *Policano* flow only from that decision's effect on habeas review in this Circuit.

Accordingly, I join Judge Raggi's dissent from the denial of en banc review and also express my hope that the New York Court of Appeals will accept this Court's requested certification.